NO. 4-00-0948

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

THE PEOPLE OF THE STATE OF ILLINOIS,

Plaintiff-Appellant,

v.

JOSHUA W. KRUGER,

Defendant-Appellee.

)

)

)

)

)

)))

Appeal from

Circuit Court of

Vermilion County

No. 99CF357

Honorable

Claudia S. Anderson,

Judge Presiding.

_________________________________________________________________

JUSTICE COOK delivered the opinion of the court:

The State appeals from an order of the trial court granting the motion 
in
 
limine
 of defendant, Joshua W. Kruger, to exclude from evidence the results of a test performed on blood found on an automobile door handle, which item the trial court had earlier suppressed.  After tendering a notice of appeal, the State declined to participate in further proceedings in the trial court, which then granted defendant's motion for a directed verdict and entered a judgment of not guilty on all charges.  We reverse in part, vacate in part, and remand for a trial.

I. BACKGROUND

In August 1999, defendant was indicted on seven counts of first degree murder (720 ILCS 5/9-1(a)(1), (a)(3) (West 1998)) based on the July 1999 death of Peter Godels, as well as two counts of home invasion (720 ILCS 5/12-11(a)(2) (West 1998)), two counts of residential burglary (720 ILCS 5/19-3(a) (West 1998)), and one count of attempt (robbery) (720 ILCS 5/8-4(a), 18-1(a) (West 1998)).

In July 1999, the Vermilion County sheriff's department obtained statements from Barbara Johnson and Jeff Holmes that implicated defendant in Godels' murder.  According to Johnson and Holmes, defendant planned to rob Godels with them, and they drove by Godels' residence two days before the murder but "chickened out."  Johnson told police that defendant said that he still wanted to do it.  Holmes told police that defendant later admitted the crime and stated that he had to "whack the dog."  That Godels' dog had been beaten was not publicly known at the time of Holmes' statement.

For purposes of obtaining a search warrant, two investigators went to an apartment building to determine the number of defendant's unit and locate defendant's vehicle.  When defendant arrived and parked his car, the investigators pulled ahead of defendant's vehicle and exited at the same time as defendant.  The investigators approached defendant and noticed bullets and a handgun inside defendant's vehicle.  After the investigators arrested defendant, they called for a tow truck, which removed defendant's vehicle to a secure location.

Later that same day, police obtained a search warrant for the vehicle commanding that the vehicle be searched and that the following items be seized:  "clothing belonging to [defendant], clothing bearing evidence of bloodstains, shoes, crowbar, ski mask, and gloves, any bludgeon, tire iron, or object capable of causing the blunt force trauma to the victim or other items which constitute evidence of the offense of [m]urder."

In August 1999, an Illinois State Police crime scene technician searched the vehicle and seized various clothing articles, a chrome casing from the front passenger door, a steering wheel cover, and a door strap and an ash tray from the right rear passenger door.  The technician also took various tapings for fingerprint identification and a swabbing of a stain on the bottom of the steering column.

In October 1999, an Illinois State Police forensic scientist tested blood from a stain on the chrome casing.  Deoxyribonucleic acid (DNA)
 from the sample was amplified using polymerase chain reaction, and it matched Godels' DNA profile.

On July 19, 2000, defendant filed a motion to suppress evidence seized as beyond the scope of the warrant.  The motion was called for hearing on July 26, 2000, and the State's Attorney asked to recess the evidentiary portion of the hearing on the suppression motion because the crime scene technician was not available to testify at that time.  The trial court set the next hearing on August 21, 2000, which hearing was later rescheduled for 1 p.m. on August 28, 2000.

On August 28, 2000, but prior to the hearing, the trial court entered a written order granting in part defendant's motion to suppress.  The trial court excluded the tapings and fingerprint evidence because they were not in plain view nor were they described in the warrant.  The trial court apparently concluded that the tapings and fingerprint evidence were not listed among the items to be 
seized
, without noting that the warrant also provided for a 
search
 of the vehicle.  However, the trial court determined that any bloodstains obtained from the swab were admissible, as were "any items taken from the vehicle which were in plain view."  That afternoon, defense counsel orally requested the trial court to clarify whether it had suppressed items "physically removed from the vehicle," namely, the steering wheel cover, the chrome casing, the door strap, and the ashtray.  The trial court responded, "Right.  Not plain view."  The State did not appeal the August 28, 2000, order.

On October 31, 2000, defendant filed a sixth motion 
in
 
limine
, seeking to bar the State from mentioning or eliciting any testimony regarding the DNA test that matched blood found on the chrome casing with Godels' DNA.  Defendant's motion contended that the blood evidence was inadmissible for the same reason as the chrome casing and was "nothing more than '[f]ruits of the poisonous tree' (evidence found from anything illegally seized)."

On November 1, 2000, the trial court called the case for trial and held a hearing on pretrial motions that morning.  During brief argument on the sixth motion 
in
 
limine
, defense counsel contended that the chrome casing was suppressed and that the defense should be allowed to rely on that ruling.  The State's Attorney responded that he did not understand that the court was suppressing the chrome casing and requested the trial court to reconsider its ruling.  He represented that the crime scene technician had to remove the chrome casing because it could not be swabbed for blood.  The State's Attorney argued that the chrome casing was within the scope of the warrant and that the police had probable cause to search without a warrant.  The trial court denied the State's oral motion to reconsider and granted defendant's sixth motion 
in
 
limine
.  Although the trial court had previously determined that any bloodstains obtained from swabbing were admissible, the court apparently took a different view of the swab of the chrome casing because that item had been removed from the vehicle and was not listed on the warrant among the items to be seized.  The trial court scheduled jury selection that afternoon and recessed.

When the trial court reconvened, the State tendered a notice of appeal "
instanter
 in open court."  The State also filed a certificate of impairment on November 1, 2000.  The notice of appeal stated that the State was appealing orders "suppressing evidence and denying a motion to reconsider the suppression and allowing [d]efendant's 6th [m]otion 
in
 
[l]imine
."  The trial court determined that the State's notice of appeal was untimely with respect to the August 28 suppression order.  The trial court cited 
People v. Bradley
, 129 Ill. App. 3d 177, 181, 472 N.E.2d 480, 485 (1984),
 and stated that Supreme Court Rule 604(a)(1) (188 Ill. 2d R. 604(a)(1)) "was not intended to make every mid[]trial ruling prohibiting the introduction of evidence proffered by the State subject to interlocutory review."

After the trial court stated that it would proceed to trial, the State's Attorney notified the trial court that the State would not be participating in the trial.  Defendant waived his right to a jury based on the State's refusal to participate.  The trial court called the case for a bench trial and granted defendant's motion for a directed verdict of not guilty without receiving any evidence.  The trial court entered judgment of not guilty on all charges.

II. ANALYSIS

A. Jurisdiction

Defendant contends that the State's appeal is untimely and should be dismissed for lack of jurisdiction.  The State responds that it could appeal from the trial court's November 1 ruling on defendant's motion 
in
 
limine
 regardless of its relation to the trial court's August 28 suppression ruling. 

Our jurisdiction in this appeal does not depend on whether the trial court first suppressed the chrome casing on August 28 or November 1.  That issue is irrelevant to deciding whether the State timely appealed the November 1 order with respect to the DNA test result, which is a distinct item of evidence apart from the chrome casing.  It was not clear that DNA test results from the chrome casing were suppressed until the November 1 order. 
 Therefore, the State's appeal of the November 1 order is timely.

We conclude that the November 1 order is subject to interlocutory appeal under Supreme Court Rule 604(a)(1) (188 Ill. 2d R. 604(a)(1))
, which allows the State to appeal from an order the substantive effect of which results in 
suppressing evidence.  The substantive effect of a trial court's pretrial order, not the label of the order or its underlying motion, controls appeal-ability under Rule 604(a)(1).  
People v. Drum
, 194 Ill. 2d 485, 489, 743 N.E.2d 44, 46 (2000).  When an order prevents information from being presented to the fact finder, 
evidence is suppressed, and the State may appeal that order.  
Drum
, 194 Ill. 2d at 492, 743 N.E.2d at 48.

On November 1, before trial, the trial court 
barred the DNA evidence by granting defendant's sixth motion 
in
 
limine
.  The substantive effect of that order would have been to withhold the DNA evidence from the fact finder and substantially impair the prosecution of defendant.  Accordingly, we have jurisdiction to decide the merits of the State's interlocutory appeal.

Because the State's timely notice of appeal deprived the trial court of jurisdiction
, the judgment of not guilty is void, and we vacate it.  See 
People v. Young
, 60 Ill. App. 3d 49, 55, 376 N.E.2d 712, 717-18 (1978).

B. Scope of Review

In deciding whether the trial court properly suppressed the blood evidence by granting defendant's sixth motion 
in
 
limine
, we also consider whether the trial court erred in denying the State's November 1 motion to reconsider the August 28 suppression order of the chrome casing.  Under the circumstances, neither the doctrine of collateral estoppel nor the law-of-the- case doctrine bars the State from relitigating the suppression of the chrome casing.  See 
People v. Neziroski
, 102 Ill. App. 3d 720, 723, 430 N.E.2d 265, 267 (1981) (collateral estoppel bars relitigation of an unappealed order suppressing evidence in a criminal proceeding absent a showing of peculiar circumstances or some additional evidence to be presented).

Here, peculiar circumstances exist because the State's Attorney misunderstood that the trial court suppressed the chrome casing in its August 28 oral remarks in response to an inquiry from defense counsel.  The written order did not mention the chrome casing.  Further
, the trial court entered the order without hearing any evidence even though the trial court had postponed the hearing at the State's request to permit the crime scene technician to testify.

C. Chrome Casing and DNA Evidence

We disagree with the trial court's apparent conclusion that the warrant here did not allow taping for fingerprints or swabbing for blood samples, although swabbing could be done of blood samples in plain view.  The warrant allowed a search of the vehicle, and that search could include a search for fingerprints and blood samples.  It was not necessary for the warrant to specify that the search would be performed by the use of tapes or swabs.  The search was done reasonably, not involving destructive testing or extensive disassembly of the vehicle.

Although the warrant did not describe the chrome casing, police could still seize it if it had potential evidentiary value as a receptacle of a described item, absent flagrant disregard for the limitations of the search warrant.  See 
People v. Ingram
, 143 Ill. App. 3d 1083, 1086, 494 N.E.2d 148, 151 (1986) (fingerprint evidence admissible where seized pistol not described in warrant was receptacle for fingerprints specifically listed in warrant).  The chrome casing could also be seized if it had a sufficient nexus to the described items and could not practically be tested inside the vehicle.  See 
Ingram
, 143 Ill. App. 3d at 1086-87, 494 N.E.2d at 151
 (taking seized pistols to police laboratory for processing served practical purposes of protecting fingerprint evidence and returning home to defendant as quickly as possible). Given that the search warrant in this case must be read as allowing a reasonable search for fingerprints and for blood samples, the crime scene technician properly seized the chrome casing.  Without violating defendant's fourth amendment rights, the crime scene technician
 could detach the chrome casing, if it were a potential receptacle of a blood stain
, and seize it for testing at a police laboratory, if it were not practical to swab the stain.  Therefore, the trial court erred in suppressing the blood and DNA evidence.

 
 
 
 III. CONCLUSION

For the reasons stated, we vacate the trial court's 
judgment finding defendant not guilty, reverse the trial court's November 1, 2000, orders denying the State's motion to reconsider the suppression of the chrome casing and granting defendant's sixth motion 
in
 
limine
, and remand for a new trial.

Reversed in part and vacated in part; cause remanded.

TURNER, J., concurs.

McCULLOUGH, P.J., specially concurs.

PRESIDING JUSTICE McCULLOUGH, specially concurring:

I am in complete agreement with this opinion.  I write only to suggest that the search warrant commanded that the vehicle be searched and commanded further that instruments, articles, and things, clothing, 
et
 
cetera
, could be seized as well as "other items which constitute evidence of the offense of murder." Slip op. at 2.  The warrant was specific in pointing out that the search should be of the automobile and the chrome casing fell within the parameters of the warrant, as it was in the vehicle and was an item which constituted evidence of the offense of murder.