NO. 4-03-0535

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

THE PEOPLE OF THE STATE OF ILLINOIS, ) Appeal from

Plaintiff-Appellee, ) Circuit Court of

v. ) Champaign County

RICKY A. PATTERSON, ) No. 02CF1597

Defendant-Appellant. )

) Honorable

) John G. Townsend,

) Judge Presiding.

_________________________________________________________________

JUSTICE COOK delivered the opinion of the court:

In April 2003, a jury convicted defendant, Ricky A. Patterson, of first degree murder (720 ILCS 5/9-1 (West 2002)), arson (720 ILCS 5/20-1 (West 2002)
), and concealment of a homicide (720 ILCS 5/9-3.1 (West 2002)
).  In May 2003, the judge sentenced him to 55 years in prison.  He appeals, and we affirm.

I. BACKGROUND

Defendant was charged with the murder of Derrick Prout, a drug dealer.  Prout's body was found in his burning Dodge Intrepid in a little-trafficked area of Lake County on Saturday, June 22, 2002, at about 8:50 a.m.  Prout had been stabbed eight times and shot twice.  His body was found in the trunk, partially wrapped in a white blanket with a distinctive blue pattern on it.  The medical examiner was unable to say when Prout had died.    

In June 2002, defendant was living in a house on the outskirts of Champaign with his girlfriend, Migdalia Rivera, and their young daughter.  They were behind on their rent and had been told to move out.  As of June 17, defendant still lived in the house but had told his landlord he would be moving out in a few days.  

Prout drove his Dodge Intrepid to Champaign on June 17, where he arrived at the apartment of his girlfriend, Candice Johnson, at about 4 p.m.  Prout brought with him a canvas bag full of cannabis.  At about 8 p.m., defendant also arrived at Johnson's apartment.  He spoke with Prout for a few minutes, then Prout retrieved the canvas bag of cannabis and drove off in his Dodge Intrepid followed by defendant in his Blazer.  Prout told Johnson he would be back soon, but she never saw him again.  Johnson called Prout's cellular phone numerous times the night of the 17th but got no response.  Johnson and Prout's sister looked for him on the 18
th.  Prout's sister spoke to defendant over the phone on the 18
th and several times on the 19th and finally met with him at about 8 p.m.  Defendant was late for the meeting and explained that he had found out his house was on fire and had to deal with that first.   

On June 19, at about 3:19 a.m., the house rented by defendant was discovered to be on fire.  An arson investigator from the state fire marshal's office determined the fire had been set intentionally at five separate locations in the house.  A blood-stained carpet was eventually discovered in the house, and a deoxyrybonucleic acid (DNA) match established that the blood was Prout's.  The carpet had a strong odor of cleaning agents and had a foamy solution coming out of it.  Investigators also found a roll of undeveloped film in the kitchen containing pictures of defendant's daughter wrapped in a blanket.  The blanket, blue with a distinctive white pattern, appeared to be the same blanket found wrapped around Prout's body.     

On June 23, after Prout's body was found in Lake County, two members of the Lake County sheriff's department drove to St. Louis to speak with defendant, who was being held by St. Louis police.  They arrived at about 3:30 a.m.  Defendant stated that he was in St. Louis because his house had burned up and he and his family had lost everything, so they were doing some shopping and sightseeing.  He said that he did not have a cellular phone or a pager.  He refused to give his questioners Rivera's cellular phone number.  When asked whether he had any money, defendant responded that he was carrying his life savings of $8,500.  Asked how he found out about the fire, he responded that he had left Champaign at about 10 p.m. the night before the fire for a court date in Chicago; while he was there, his family told him about the fire by telephone.    

At trial, defendant testified to the meeting with Prout at Johnson's apartment on June 17.  He testified he and Prout left in separate cars and went to a car wash, where he gave Prout $16,000 cash for 30 pounds of cannabis.  After Prout left, defendant washed his car, then went home, watched television, and went to bed.  The next day, the 18th, he "bummed around the house" and then stopped by his parents' home.  He had a court date in Chicago on the 19th, so he and Rivera left Champaign on the 18
th at about 8 p.m.  They checked into the Rand Motel in Lake County at almost 11 p.m.  The morning of the 19
th, he had car troubles.  He took his car to a mechanic around 7 a.m. but had to wait until the shop opened.  He was late for his 9 a.m. court hearing, arriving at about 11 a.m., and was told to return the next day, the 20
th.  As he and Rivera traveled back to Champaign, he received a call from his brother, telling him about his house fire.  After arriving in Champaign at about 6:30 p.m., he drove directly to the house, where he recovered a few items.  He and Rivera returned to Chicago the morning of the 20
th in time for his rescheduled 9 a.m. court date.

Defendant testified that on June 21, he went to St. Louis with Rivera and their daughter, arriving at about 10 p.m.  They spent the 22
nd, the day Prout's body was found in Lake County, going to the zoo and sightseeing.  At 5:30 p.m., as defendant was getting ready to go out to get dinner, the St. Louis police kicked in the door of the hotel room and arrested him.

Defendant used a cellular phone leased to Rivera.  On the 18th, Rivera's phone records show that calls were placed from that phone at various locations in the Champaign area, the last call being at 9:36 p.m.  There were Champaign calls on the 19th, the first call being at 8:22 a.m.
  The timing of the calls indicates that it was possible for defendant to kill Prout, set the house fire that was discovered on June 19 at 3:19 a.m., and then drive the Dodge Intrepid with Prout's body to Lake County, all before appearing in court in Cook County on June 19 at 11 a.m.  On cross-examination, defendant attempted to explain these calls: he inadvertently left the phone in the car of his friend, Chris Smith, in Champaign at about 3:30 p.m. on the 18
th.  That night he sold Smith eight pounds of cannabis in Schaumburg but forgot to get the phone back.  At about 2:30 p.m. on the 19
th, after defendant's missed court date, Smith returned the phone to him at the courthouse in Chicago.

In his opening statement, defendant's attorney said that Rivera would testify.  She was issued a subpoena and was scheduled to testify but chose to invoke her right to remain silent.  Over objection, the State was allowed to present testimony that Rivera gave to the grand jury in January 2003.  Rivera told the grand jury that she and defendant left Champaign on the 18
th at about 8 p.m. and that they stayed at the Rand Motel.  Although defendant had a court hearing scheduled for 9:30 a.m. on the 19
th, they did not leave the motel until 10:30 a.m. because of car trouble.  They were in the Chicago area until late afternoon when they headed back to Champaign.  Rivera stated that she or defendant had the cellular phone registered in her name with them the entire time.  They first heard of the fire by phone as they were returning from Cook County.

On April 23, 2003, the jury returned guilty verdicts on all three charges against defendant.  On May 29, defendant filed a posttrial motion, arguing that (1) he had not been proved guilty beyond a reasonable doubt and (2) the trial court had erred in admitting Rivera's grand-jury testimony.  The court denied the motion and proceeded to sentence defendant to 50 years for first degree murder (720 ILCS 5/9-1 (West 2002)); 5 years for concealing a homicidal death (720 ILCS 5/9-3.1 (West 2002)), to be served consecutively with the murder sentence; and a concurrent 5-year sentence on the arson charge (720 ILCS 5/20-1 (West 2002)).  Defendant filed a motion to reconsider the sentence, arguing that it was excessive, which the court denied.  This appeal followed.

II. ANALYSIS

On appeal, defendant renews arguments from his posttrial motion and his motion to reconsider and raises several new arguments.  He argues that (1) the State
 violated his right to a fair trial by (a) eliciting testimony about defendant's refusal to answer certain questions when interviewed in St. Louis; and (b) pointing out that the DNA sample was available for defendant to perform his own DNA test; and (2) his trial counsel was ineffective for failing to challenge sufficiently the State's DNA expert.  We consider these arguments in turn.

A. Rivera's Grand-Jury Testimony

We begin by considering defendant's challenge to the admission of Rivera's grand-jury testimony.  The trial court admitted this testimony under section 115-10.2 of the Code of Criminal Procedure of 1963 (725 ILCS 5/115-10.2 (West 2002)), which allows into evidence the prior statements of a witness when the witness refuses to testify despite being ordered by the court to do so.  
Under the statute, such statements may be admitted only when they meet six requirements:  (1) trustworthiness, (2) materiality, (3) probative value, (4) the interests of justice, (5) the declarant's unavailability as a witness, and (6) notice.  725 ILCS 5/115-10.2 (West 2002)
; 
People v. Brown
, 303 Ill. App. 3d 949, 961, 709 N.E.2d 609
, 618 (1999) (First District).
  Defendant does not dispute that he received adequate notice that the State would use the testimony.

Defendant objects that the admission of Rivera's  testimony violated both section 115-10.2 and the confrontation clause of the sixth amendment.  That clause provides that "[i]n all criminal prosecutions, the accused shall enjoy the right *** to be confronted with the witnesses against him."  U.S. Const., amend. VI.  
This court has said before that section 115-10.2 explicitly incorporated confrontation-clause standards, such that the use of evidence properly admitted under the statute could also withstand constitutional scrutiny.  See 
People v. Thomas
, 313 Ill. App. 3d 998, 1002, 730 N.E.2d 618, 623 (2000).
  In light of the recent United States Supreme Court
 case of 
Crawford v. Washington
, ___ U.S. __, __ L. Ed. 2d __, 124 S. Ct. 1354 (2004), that view is no longer tenable.

In 
Crawford
, ___ U.S. at ___, ___ L. Ed. 2d at ___, 124 S. Ct. at 1369, the Court held that the testimonial statements of a witness who is unavailable at trial may be used against a criminal defendant only where the defendant had a prior opportunity for cross-examination.  
Crawford
 thus rejected the approach of 
Ohio v. Roberts
, 448 U.S. 56, 66, 65 L. Ed. 2d 597, 608, 100 S. Ct. 2531, 2539 (1980), under which hearsay statements of an unavailable declarant could be admitted against a criminal defendant if they (1) fell within a firmly rooted hearsay exception or (2) bore "particularized guarantees of trustworthiness."  
The 
Roberts
 approach had left to the courts
 the task of determining, from the totality of circumstances, whether particular statements were made under conditions rendering them sufficiently reliable.  
Idaho v. Wright
, 497 U.S. 805, 820, 111 L. Ed. 2d 638, 655-56
, 110 S. Ct. 3139, 3149 (1990).  This led to considerable unpredictability, but its "unpardonable vice [was] *** its demonstrated capacity to admit core testimonial statements that the [c]onfrontation [c]lause plainly meant to exclude."  
Crawford
, ___ U.S. at ___, ___ L. Ed. 2d at ___, 124 S. Ct. at 1371, citing
 
Thomas
, 313 Ill. App. 3d 998, 730 N.E.2d 618,
 as an example.  Clearly section 115-10.2, focusing as it does on a judicial determination of trustworthiness
, can no longer be said to incorporate the relevant constitutional standard. 
 

The application of 
Crawford
 in this case is clear.  
Crawford
 requires that a defendant 
have an opportunity to cross-examine a witness if the witness's testimonial statements are to be used against him.  
Crawford
, ___ U.S. at ___, ___ L. Ed. 2d at ___, 124 S. Ct. at 1374.
  Although the Supreme Court refrained from giving a complete definition of what "testimonial" means in this context, the term includes testimony given before a grand jury.  
Crawford
, ___ U.S. at ___, ___ L. Ed. 2d at ___, 124 S. Ct. at 1374.
  Rivera testified to the grand jury, and defendant had no opportunity to cross-examine her; the State's use of her testimony therefore violated the confrontation clause.

What we have said so far essentially moots any discussion of whether the trial court in this case properly applied section 115-10.2
.  Nevertheless, we note that
 we are troubled by the cursory manner in which the court allowed Rivera's grand-jury testimony into evidence.  Despite the fairly detailed statutory requirements and the confrontation-clause concerns raised by this type of evidence even before 
Crawford
, the court did not, so far as the record reveals, give any consideration to the substance of the testimony.  Discussions at trial concerned whether Rivera was unavailable but not whether her testimony would be probative evidence of any material fact, both statutory requirements.  See 725 ILCS 5/115-10.2(a)(1), (a)(2) (West 2002).  Surely the fact that Rivera's testimony actually contradicts the State's theory of the case suggests that it is not particularly probative of a material fact, at least not without some further explanation of what the State intended to prove with the testimony.  This deserved some inquiry.

Despite the trial court's error in allowing Rivera's grand-jury testimony into evidence, we find the error harmless beyond a reasonable doubt.  See 
Crawford
, ___ U.S. at ___ n.1, ___ L. Ed. 2d at ___ n.1, 124 S. Ct. at 1359 n.1 (explicitly declining to address whether lower court's error was harmless error).  First, it is difficult to understand how Rivera's testimony harmed defendant
 when it basically repeated what he said himself when interviewed in St. Louis.  In its closing argument, the State relied on evidence that defendant was the last person seen with Prout, that Prout's blood was found in defendant's house, and that Prout's body was found wrapped in defendant's blanket.  The State also used the phone records to show where Rivera's phone was at the relevant times.  It is true that Rivera's testimony showed that she and defendant shared the phone, but other evidence also indicated that to be the case.  In short, the State's case did not rely significantly on Rivera's testimony to the grand jury, and exclusion of that testimony would not likely have made a difference in the jury verdict.

B. Ineffective Assistance of Trial Counsel

1. 
Opening
 
Statement

In a related argument, defendant claims that his trial counsel was ineffective because in his opening statement he told the jury that Rivera would testify at trial when counsel knew full well that she would not.  To show ineffective assistance of counsel, a defendant must show that counsel's performance fell below an objective standard of reasonableness and there is a reasonable probability that the result of the proceedings would have been different absent counsel’s errors.  
Strickland v. Washington
, 466 U.S. 668, 687, 80 L. Ed. 2d 674, 693, 104 S. Ct. 2052, 2064 (1984).  It is not 
per
 
se
 ineffective assistance of counsel for counsel not to provide promised testimony.  
People v. Manning
, 334 Ill. App. 3d 882, 892, 778 N.E.2d 1222, 1230 (2002).  Defendant cites two cases in support of his argument (
People v. Ortiz
, 224 Ill. App. 3d 1065, 586 N.E.2d 1384 (1992); 
People v Lewis
, 240 Ill. App. 3d 463, 609 N.E.2d 673 (1992)), but both are distinguishable.  In both cases, counsel's defense strategy rested on the existence of another suspect who allegedly committed the crime; counsel argued that evidence would show that someone other than the defendant was guilty but failed to produce any evidence of the supposed culprit.  
Ortiz
, 224 Ill. App. 3d at 1070-71, 586 N.E.2d at 1387-88; 
Lewis
, 240 Ill. App. 3d at 468, 609 N.E.2d at 677
.

We find this case to be more similar to 
Manning
, 334 Ill. App. 3d at 892, 778 N.E.2d at 1230, in which counsel told the jury that the defendant would testify but the defendant never took the stand.  Because nothing in the record suggests that the decision not to put the defendant on the stand was due to counsel's incompetence, the appellate court found no ineffective assistance of counsel.  
Manning
, 334 Ill. App. 3d at 893, 778 N.E.2d at 1231.
  Here, the record shows that Rivera invoked her fifth amendment rights and refused to testify, which is, of course, adequate reason not to call her as a witness.  Nor does the record indicate that defense counsel knew when he made his opening statement that Rivera would refuse to testify.  We find no error in counsel's assistance on this issue.

2. 
Failure
 
To
 
File
 
a
 
Motion
 
To
 
Suppress

The next issue defendant raises is whether law-enforcement officials violated the scope of the search warrant when they seized undeveloped film from the burned house.  He has forfeited this issue by not raising it previously but argues that counsel was ineffective for failing to file a motion to suppress the evidence.  He must thus show a reasonable probability that the trial court would have granted the motion had counsel made one.  See 
People v. Little
, 322 Ill. App. 3d 607, 611, 750 N.E.2d 745, 750 (2001)
.  The search warrant authorized seizure of the following:

"any and all items of physical evidence related 

to the commission of the offenses [
sic
] of 

[m]urder[,] including but not limited to:

*** indicia of occupancy or ownership of the above-described residence; insurance and 

financial records for the above-described 

property, its owners[,] or occupants; any items 

indicating the presence of Derrick A. Prout, 

in the above-described property; and 
photo
-

graphs
 
of
 
the
 
above-described
 
items
, 
and
 
the
 

residents
."  (Emphasis added.)

We agree with the State that the undeveloped film fell within the scope of the warrant.  The warrant clearly authorized the seizure of photographs, and it is difficult to imagine any use for exposed but undeveloped film other than to develop it into photographs.  The film could thus be seized under the warrant, either as the ‟functional equivalent" of photographs or as a receptacle containing them.  See 
United States v. Hill
, 19 F.3d 984, 988 (5th Cir. 1994) (whether evidence falls within warrant depends on substance of item seized, not the label applied by defendant); see also
 
People v. Kruger
, 327 Ill. App. 3d 839, 844, 764 N.E.2d 138, 142 (2002) (absent flagrant disregard for limitations of warrant, police may seize potential receptacle of named evidence).  Therefore, we find no reasonable probability that a motion to suppress would have been granted, and thus no ineffective assistance of counsel is shown.

3.  
Failure
 
To
 
Effectively
 
Challenge
 
the
 
State's
 
DNA
 
Evidence

Defendant also argues that his trial counsel was ineffective in failing to challenge effectively the State's DNA evidence.  Generally, matters of trial strategy will not support a claim of ineffective assistance of counsel unless counsel failed to conduct any meaningful adversarial testing.  
People v. Guest
, 166 Ill. 2d 381, 394, 655 N.E.2d 873, 879 (1995).  Defendant first argues that trial counsel should have challenged Kelly Gannon's qualifications as an expert.  Defendant objects that Gannon (1) possessed only a bachelor's degree
, (2) was only 25 years old, (3) had only two publications, and (4) had testified as an expert only twice before.  These are doubtless relevant considerations, but trial counsel did cross-examine Gannon on all of these issues, so it certainly cannot be said that he failed to conduct meaningful adversarial testing.
  In any event, whether a witness should be qualified as an expert is within the discretion of the trial court.  
People v. Miller
, 173 Ill. 2d 167, 186, 670 N.E.2d 721, 730 (1996).  The expert's knowledge must be more than that of the average citizen, but no specific rules prescribe what experience, education, or training is required to gain this knowledge.  
Miller
, 173 Ill. 2d at 186, 670 N.E.2d at 730. 
 Defendant has not shown any reasonable probability that a challenge based on Gannon's credentials would have succeeded.

Defendant also argues that trial counsel should have challenged more vigorously the DNA evidence itself, such as by retaining his own expert.  The decision whether to call particular witnesses and the manner and extent of cross-examination are matters of trial strategy and thus will not ordinarily support an ineffective-assistance-of-counsel claim.  
People v. Ramey
, 152 Ill. 2d 41, 53-54, 604 N.E.2d 275, 281 (1992).  Counsel cross-examined Gannon extensively on many of the issues defendant raises now, such as the deterioration of the DNA sample caused by exposure to the elements and to cleaning solutions.  Defendant has not shown that counsel was incompetent in his approach to the DNA evidence.

C. Instances of Prosecutorial Misconduct

Defendant next argues that he did not receive a fair trial because of two instances of prosecutorial misconduct.  The State points out that defendant has forfeited these two issues by failing to object at trial and raise them in his posttrial motion.  See 
People v. Enoch
, 122 Ill. 2d 176, 186, 522 N.E.2d 1124, 1130 (1988).  Even if we were to consider these issues, defendant would not prevail.

1. 
The
 
State's
 
Questioning
 
of
 
Law-Enforcement
 
Officials

Defendant urges us to find prosecutorial misconduct first in the State's questioning of the two law-enforcement officials who questioned him in St. Louis.  They testified that defendant offered to answer some questions but not others and specifically that he refused to tell them about his employment history and Rivera's cellular phone number.  It is true, as defendant argues, that the prosecution may not impermissibly comment on the defendant's silence when he has invoked his right to remain silent (
Doyle v. Ohio
, 426 U.S. 610, 619, 49 L. Ed. 2d 91, 98, 96 S. Ct. 2240, 2245 (1976)).  For support, defendant cites 
People v. Johnson
, 170 Ill. App. 3d 828, 833, 525 N.E.2d 546, 550 (1988), in which the testimony was that the defendant had failed to provide the arresting officer with an exculpatory story.  
In addition, in that case, the State proceeded with the improper line of questioning in the face of multiple defense objections, and then in its closing argument
 reiterated that the defendant had failed to provide an excuse to the police when he was arrested.  
Johnson
, 170 Ill. App. 3d at 833-34, 525 N.E.2d at 550
.  But ours is a very different case--one in which defendant had chosen to speak with police.  Under the circumstances present here, no problem arises from the law-enforcement witnesses testifying to the substance of the conversation, including the questions defendant refused to answer.  See 
United States v. Goldman
, 563 F.2d 501, 504 (1st Cir. 1977) (where the defendant waived 
Miranda
 (
Miranda v. Arizona
, 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602 (1966)) rights and spoke to police, and prosecutor permissibly adduced testimony to entire conversation, including the defendant's refusal to answer two questions).

2. 
The
 
State's
 
Redirect
 
Examination
 
of
 
DNA
 
Expert

The other prosecutorial conduct challenged by defendant concerns questions the State asked Kelly Gannon, its DNA expert, on redirect examination.  The State asked her whether the DNA sample from the house was available to be retested and whether anyone had sought to test the evidence.  Defendant argues that this line of questioning impermissibly shifted the burden of proof to him by implying that he needed to present evidence to rebut the State's.  He points out that the prosecution may not make arguments that diminish the presumption of innocence.  See 
People v. Oliver
, 306 Ill. App. 3d 59, 69, 713 N.E.2d 727, 735 (1999) (First District).  That is certainly true, but a difference lies between arguments and evidence.  Although the State did present this testimony, it made no argument suggesting that defendant needed to prove his innocence, or that he needed to present evidence.  The two questions to which objections were raised, as they were in the middle of several hundred pages' worth of testimony, cannot be said to have shifted the burden of proof to defendant.  This is particularly so because any possible error would have been cured by the instructions to the jury and by the arguments given by both sides.  In light of the above discussion, we also reject defendant's argument that his attorney's failure to object to the alleged prosecutorial misconduct constituted ineffective assistance of counsel.

D. Reasonable Doubt

In an argument successfully preserved in his posttrial motion, defendant next asserts that he was not proved guilty beyond a reasonable doubt.  A reviewing court will not overturn the fact finder's verdict unless the evidence is so unreasonable, improbable, and unsatisfactory as to leave a reasonable doubt as to the defendant's guilt.  
People v. Brown
, 169 Ill. 2d 132, 152, 661 N.E.2d 287, 296 (1996).  Defendant objects that the State's case consisted almost exclusively of circumstantial evidence, most of which he argues is unreliable or inconclusive.  Pointing out the lack of direct evidence, such as a murder weapon or an eyewitness, he argues that the circumstantial case is insufficient to prove his guilt.  The State may obtain a conviction, however, on the basis of wholly circumstantial evidence where "the entire chain of circumstances leads to a reasonable and moral certainty that the defendant committed the crime."  
People v. Peete
, 318 Ill. App. 3d 961, 965, 743 N.E.2d 689, 692 (2001).  Here, even without the prohibited grand-jury testimony, more than enough circumstantial evidence provided the jury with a moral certainty that defendant committed the alleged crimes.  We find that the evidence was not so unreasonable, improbable, or unsatisfactory as to leave a doubt of defendant's guilt.

E. Sentence

1. 
First
 
Degree
 
Murder

Finally, defendant raises two issues concerning his sentence.  He asserts first that his sentence for first degree murder is excessive.  A trial court has wide discretion in sentencing and should be reversed only when it abuses that discretion.  
People v. Coleman
, 166 Ill. 2d 247, 258, 652 N.E.2d 322, 327 (1995).  The record reflects that the court heard arguments concerning aggravation and mitigation, reviewed the presentence report and the letters written in support of defendant, considered all of this information, and arrived at a sentence.  The sentence of 50 years is within the statutory range of 20 to 60 years.  730 ILCS 5/5-8-1(a)(1)(a) (West 2002).  We find no abuse of discretion.

2. 
Concealment
 
of
 
a
 
Homicide

Defendant also objects that his sentence for concealment of a homicide should have been ordered served concurrently rather than consecutively because it was part of a single course of conduct during which there was no substantial change in the nature of the criminal objective.  As the State points out, however, a consecutive sentence was mandatory here because one of the two offenses was first degree murder.  730 ILCS 5/5-8-4(a)(i) (West 2002); 
People v. Jennings
, 343 Ill. App. 3d 717, 730, 798 N.E.2d 1211, 1221-22 (2003).

III. CONCLUSION

For the foregoing reasons, we affirm defendant's convictions and sentence.

Affirmed.

KNECHT, P.J., and STEIGMANN, J., concur.