FIRST DIVISION

June 27, 2005

No. 1-04-0094

THE PEOPLE OF THE STATE OF ILLINOIS, ) Appeal from the

) Circuit Court of

Plaintiff-Appellee, ) Cook County.

)

v. ) No. 00 CR 18290    )

MAURICE CANNON, ) Honorable

) Daniel P. Darcy, 

 Defendant-Appellant. ) Judge Presiding.

 JUSTICE GORDON delivered the opinion of the court
:

Defendant, Maurice Cannon, was convicted after a bench trial of predatory criminal sexual assault of a child, sexual exploitation of a child, and unlawful restraint involving S.P., his seven-year-old niece.  Defendant appeals contending that the statute that allowed for the introduction of S.P.'s statements to third persons at his trial was unconstitutional on its face and that those wrongfully admitted statements resulted in his conviction
.  We affirm.

FACTUAL BACKGROUND

B.P., S.P.'s mother, was driving with S.P. to buy dinner on July 7, 2000, when S.P. stated that defendant had told her she had a "big ole butt," and that he liked women with "big ole butts."  S.P.'s mother was concerned and, after consulting with other family members about how to respond to this information, she decided to ask S.P. more specifically what had happened between her and her uncle.

S.P. informed her mother that defendant would take her from the couch on which she slept when she and B.P. would stay overnight at her grandfather's, which was also defendant's residence.  She related that defendant had kissed her "privates" and had tried to put his "private" inside of her.  On another occasion, after she and defendant watched 
Soul Train
, he exposed himself to her.  S.P. also informed B.P. that defendant had taught her to "French kiss."

Clifton Woodard, a Department of Children and Family Services (DCFS) investigator subsequently met with S.P.  She informed him that defendant had touched her "private area" with his hand and tongue.

Prior to defendant's trial, the State moved for, and the circuit court approved, over defendant's objection, the subsequent admission at trial of S.P.'s statements made to her mother and Investigator Woodard pursuant to section 115-10 of the Code of Criminal Procedure of 1963 (725 ILCS 5/115-10 (West 2002)).  That section provides, in pertinent part:

"§ 115-10. Certain hearsay exceptions.
  (a) In a prosecution for a physical or sexual act perpetrated upon or against a child under the age of 13, or a person who was a moderately, severely, or profoundly mentally retarded person as defined in this Code and in Section 2-10.1 of the Criminal Code of 1961
 at the time the act was committed, including but not limited to prosecutions for violations of Sections 12-13 through 12-16 of the Criminal Code of 1961 
and prosecutions for violations of Sections 10-1, 10-2, 10-3, 10-3.1, 10-4, 10-5, 10-6, 10-7, 11-6, 11-9, 11-11, 11-15.1, 11-17.1, 11-18.1, 11-19.1, 11-19.2, 11-20.1, 11-21, 12-1, 12-2, 12-3, 12-3.2, 12-4, 12-4.1, 12-4.2, 12-4.3, 12-4.7, 12-5, 12-6, 12-6.1, 12-7.1, 12-7.3, 12-7.4, 12-10, 12-11, 12-21.5, 12-21.6 and 12-32 of the Criminal Code of 1961, 
the following evidence shall be admitted as an exception to the hearsay rule:

 (1) testimony by the victim of an out of court statement made by the victim that he or she complained of such act to another; and

(2) testimony of an out of court statement made by the victim describing any complaint of such act or matter or detail pertaining to any act which is an element of an offense which is the subject of a prosecution for a sexual or physical act against that victim.
  (b) Such testimony shall only be admitted if:

 (1) The court finds in a hearing conducted outside the presence of the jury that the time, content, and circumstances of the statement provide sufficient safeguards of reliability; and

(2) The child or moderately, severely, or profoundly mentally retarded person either:

(A) testifies at the proceeding; or

(B) is unavailable as a witness and there is corroborative evidence of the act which is the subject of the statement; and

(3) In a case involving an offense perpetrated against a child under the age of 13, the out of court statement was made before the victim attained 13 years of age or within 3 months after the commission of the offense, whichever occurs later, but the statement may be admitted regardless of the age of the victim at the time of the proceeding."  725 ILCS 5/115-10 (West 2002).

At defendant's trial, S.P.'s mother and DCFS Investigator Woodard did, in fact, testify as to the various acts of sexual abuse performed on her by defendant set out above.  

Dr. Purim-Shem-Tov of Wyler's Children's Hospital also testified to S.P.'s statements made to her in the course of treating S.P.  S.P. told the doctor that she was rectally penetrated with a finger by "an uncle who was living in the grandfather's house," as well as being touched in her vaginal area beneath her underwear.  She denied ever being penetrated by the uncle's penis, however.   

Chicago police detective Bowen published defendant's signed confession of various acts of sexual abuse against S.P. at his trial.  Defendant confessed to digitally penetrating S.P. in both her anus and vagina while she slept on a couch in his home.  He indicated he did this because he liked women with "big butts" and S.P. had a "big butt," and he stated that he would sometimes become aroused during this conduct.  Defendant further confessed to touching his penis to S.P.'s anus and vagina while on his bed.  In particular, defendant admitted to perpetrating some of this abuse during and after he and S.P. danced to the music programs 
Caliente
 and 
Soul Train
.  

S.P. herself
 also testified at defendant's trial.  She testified on direct examination to the same acts that defendant confessed to.  She particularly noted that defendant had started French kissing her one day while they watched 
Calienge
 [
sic
] and a "soul train line."  Defense counsel elicited on cross-examination, however, that S.P. did not relate each incident of abuse that she described to each person who interviewed her.  S.P.  also had difficulty under cross-examination placing when the abuse occurred, sometimes describing the abuse as happening on different dates than given by defendant in his confession.  Defense counsel further elicited that S.P. never remembered talking to Investigator Woodard. 

After hearing the evidence and arguments, the trial court found defendant guilty of 12 counts of predatory criminal sexual assault, aggravated criminal sexual assault, and aggravated criminal sexual abuse, with the lesser offenses merging into the greater, as well as the previously mentioned counts of sexual exploitation of a child and unlawful restraint.  Based on his previous conviction for aggravated criminal sexual assault in 1991, the court sentenced defendant to natural life in prison under section 12-14.1(b)(2) of the Criminal Code of 1961 (720 ILCS 5/12-14.1(b)(2) (West 2002)).  Defendant appeals. 

ANALYSIS

Defendant contends that his conviction must be reversed because section 115-10, the statute under which much of the testimony at his trial was presented, is unconstitutional on its face in light of 
the recent United States Supreme Court decision of 
Crawford v. Washington
, 541 U.S. 36, 158 L. Ed. 2d 177, 124 S. Ct. 1354 (2004)
.  
We disagree. 

Statutes are presumed to be constitutional.  
People v. Wilson
, 214 Ill. 2d 394, 398-99 (
2005) ("All 
statutes
 are 
presumed
 to be 
constitutional
, and the burden of rebutting that presumption is on the party challenging the validity of the 
statute
 to demonstrate clearly a 
constitutional
 violation")
.  Moreover, courts will construe statutes, if possible, to be constitutional.  
Wilson
, 214 Ill. 2d at 398-99 
.  
Finally, we note that " '[a] facial challenge to a legislative Act is *** the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid.' "  
In re C.E.
, 161 Ill. 2d 200, 210-11 (1994) quoting 
United States v. Salerno
, 481 U.S. 739, 745, 95 L. Ed. 2d 697, 707, 107 S. Ct. 2095, 2100 (1987).
  

While neither side asks us to break down the various subsections of the statute in determining whether it passes constitutional muster under 
Crawford
, in our analysis we will not treat section 115-10 monolithically.  Rather, each subsection of the statute bears examination independently before we reach any conclusion as to the constitutionality of each such provision separately, or as to the effect of their interaction on each other so as to determine the validity of the statute in its entirety.  As our supreme court explained, a "statute need not necessarily stand or fall unitarily; some subsections may be constitutional and others not."  
Hill v. Cowan
, 202 Ill. 2d 151, 156 (2002) (also considering the constitutionality of each subsection of a statute separately); see also 
McDougall v. Lueder
, 389 Ill. 141 (1945) (finding one section of a statute unconstitutional, but sustaining the remaining sections)
.  We will therefore begin by considering the validity of the subsection of the statute applied at defendant's trial, subsection (b)(2)(A), under 
Crawford
.
  

In 
Crawford
, the Supreme Court held that all testimonial statements must be subject to cross examination to pass muster under the confrontation clause, specifically rejecting the idea that any quantum of indicia of reliability could compensate for the lack of cross examination.  
Crawford
, 541 U.S. at 61-62, 158 L. Ed. 2d at 199, 124 S. Ct. at 1370-71 (overruling 
Ohio v. Roberts
, 448 U.S. 56, 66, 65 L. Ed. 2d 597, 608, 100 S. Ct. 2531, 2539 (1980), which allowed un-cross-examined statements when accompanied by "particularized guaranties of trustworthiness").  However, the 
Crawford
 Court also noted that its holding had no application in cases where the declarant, whose testimonial statements were introduced through third persons, testified as well.  
Crawford
, 541 U.S. at 59 n. 9, 158 L. Ed. 2d at 197 n. 9, 124 S. Ct. at 1369 n. 9 ("we reiterate that, when the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements. [Citation.] ***  The Clause does not bar admission of a statement as long as the declarant is present at trial to defend or explain it").

Subsections (b)(1) and (b)(2)(A) of section 115-10 interact to specifically provide that a victim's hearsay statements shall be admitted only when there are "sufficient safeguards of reliability" surrounding the statements 
and
 the victim actually testifies at trial.  Thus, in requiring the appearance of the victim at trial, the procedure presented in subsection (b)(2)(A) is wholly consistent with the holding of 
Crawford
 and, in and of itself, suffers no constitutional impediment. 

The State contends that, since the subsection applied satisfied the constitutional holding of 
Crawford
, defendant is without standing to challenge the statute based upon a subsection not controlling over his facts simply because that subsection, subsection (b)(2)(B), does not require the appearance of the victim and instead relies on "sufficient safeguards of reliability" and "corroborative evidence."  See 
People v. Wisslead
, 108 Ill. 2d 389, 397 (1985)
 ("in the absence of facts demonstrating an unconstitutional application of the statute in this case the defendant may not challenge the statute on the ground that it might conceivably be applied unconstitutionally in some hypothetical case").  Defendant counters that unconstitutional features so pervade section115-10 that it must fall as a whole.  See 
People v. Morgan
, 203 Ill. 2d 470, 482 (2003) (
"
The general rule is that courts will not consider the validity of a statutory provision unless the person challenging the provision is directly affected by it or the unconstitutional feature is so pervasive as 
to render the entire statute invalid"
)
; accord 
People v. Reiner
, 6 Ill. 2d 337, 341 (1955) ("A court will consider the validity of a statutory provision only at the instance of one who is directly affected by it, [citations], unless, indeed, the unconstitutional feature is so pervasive as to render the entire act invalid").  Specifically, defendant contends that, because section 115-10 "fails to incorporate a blanket prohibition of testimonial statements where the defense has no opportunity to cross-examine the declarant" and "incorporates an evidentiary standard [of sufficient indicia of reliability]
 specifically rejected by the United States Supreme Court, it is facially invalid," and, therefore,
 the entire statute "is unconstitutional on its face, [and] each and every application of the statute is necessarily erroneous."
  
While defendant's contention may preserve his standing to make a challenge to section 115-10, we nevertheless disagree with his evaluation of the validity of the statute since we find subsection (b)(2)(A) to be severable from any other allegedly unconstitutional provisions in section 115-10.

The general rule is that the finding of invalidity of any particular subsection of a statute will only lead to its severance and will not impact the validity of the remaining subsections, provided the remaining sections can function independently.  See 
In re Amanda D.
, 349 Ill. App. 3d 941, 954 (2004) ("
Our holding [of unconstitutionality] is limited to this specific subsection of the Act. Generally, a subsection of a statute is severable ***")
; 
McDougall
, 389 Ill. at 155 ("The fact that a part of an act is unconstitutional does not require that the remainder shall be held void unless all the provisions are so connected as to depend upon each other. ***  If, when the unconstitutional portion is stricken out, that which remains is complete in itself and capable of being executed wholly independently of that which is rejected, it must be sustained"); see also 
Fiorito v. Jones
, 39 Ill. 2d 531, 540 (1968) 
("
The settled and governing test of severability is whether the valid and invalid provisions of the Act are 'so mutually "connected with and dependent on each other, as conditions, considerations or compensations for each other, as to warrant the belief that the legislature intended them as a whole, and if all could not be carried into effect the legislature would not pass the residue independently ***." ' [Citation.])."
  

Here, we see no reason why subsection (b)(2)(A), the subsection applied at defendant's trial, which in and of itself is constitutional, 
could not function independently of subsection (b)(2)(B), which tracks 
Ohio v. Roberts
' requirements of reliability without requiring the declarant to testify at trial.  The independence of these provisions is highlighted by the fact that the key component of each of these subsections is mutually exclusive of the other in that subsection (b)(2)(A) admits the testimony when the victim testifies at trial, while subsection (b)(2)(B) requires unavailability.

As noted earlier, defendant also urges that the statute's general contemplation of "sufficient safeguards of reliability,
" set forth in subsection (b)(1), which could be constitutionally impermissible if it formed the only basis for the admission of hearsay testimony (see 
Crawford
, 541 U.S. at 61-62, 158 L. Ed. 2d at 199, 124 S. Ct. at 1370-71
), so pervades the statute that the statute as a whole becomes invalid
 irrespective of any other procedures set forth in the statute.  
However, defendant does not even attempt to explain 
how
 that consideration would detract from the constitutionality of subsection (b)(2)(A) established through its requirement that the declarant testify.  In our view, when the declarant appears to testify, as required under subsection (b)(2)(A), rather than denying confrontation, the additional requirement of "sufficient safeguards of reliability" provides defendants with additional protection.  See 
In re E.H.
, 355 Ill. App. 3d 564, 583-84 (2005) (Quinn, J., dissenting).
  Moreover, we note that there may even be some situations where "sufficient safeguards of reliability" are still sufficient to allow admission of hearsay statements
.  See 
E.H.
, 355 Ill. App. 3d at 584-85 (Quinn, J., dissenting) ("Based on the above exceptions [coconspirator statements, dying declarations, confrontation forfeited through wrongdoing, and nontestimonial statements] and language found in 
Crawford
, it is clear that 'set[s] of circumstances exist' under which many of our statutory exceptions [under subsection (b)(2)(B)] to the hearsay rule would be valid").  
Thus, defendant's argument must fail.

Defendant contends we should follow Justice Cook's special concurrence in 
People v. Miles
, 351 Ill. App. 3d 857, 868 (2004)(Cook, J., specially concurring), a Fourth District case, in which he stated:  "We should not try to pick out pieces of section 115-10 that might survive 
Crawford
.  The legislature should decide whether it wants a new section 115-10, one which will be very different from the one it enacted."  This statement should not be divorced from its context, however
.  In context, 
that statement is 
dicta
 even as to the special concurrence itself, followed by a careful and detailed analysis of the contested issue in that case, namely, whether the declarant was ever effectively subject to cross-examination when she "[was] unable to understand what happened, [could not] remember what happened, [could not] understand the questions asked, or [was] unable to answer them" as demonstrated by her  "basically answer[ing] 'I don't know' to every question asked her."  
Miles
, 351 Ill. App. 3d at 869 (Cook, J., specially concurring).  Finally, defendant also ignores Justice Cook's subsequent agreement with the basic proposition that "when the declarant is subjected to cross-examination and is present to defend or explain the statement, the constitutional requirement is satisfied."  
Miles
, 351 Ill. App. 3d at 870 (Cook, J., specially concurring).  It is not for us to forego salvaging a constitutional portion of a statute, otherwise salvageable, even though it may be more expedient for the legislature to redraft the statute in its entirety. See 
Hill
, 202 Ill. 2d at 156; 
McDougall
, 389 Ill. at 155.
  
   

Defendant further contends that the decision by another division of this appellate district in 
In re E.H.
, 355 Ill. App. 3d 564 (2005), which he claims held section 115-10 to be facially unconstitutional 
en toto
, is "controlling."  We begin by initially noting that defendant misstates the effect that the decision of one appellate court panel has upon the subsequent considerations of another.  We are not bound by the decisions of the other divisions of this district so that even if 
E.H.
 held as defendant claims, it would not be "controlling" over our analysis.  
Muller v. Health & Hospital Governing Comm'n
, 
106 Ill. App. 3d 383, 386 (1982) (holding itself not bound by the opinion of another division of its own appellate district)
, 
rev'd on other grounds
, 93 Ill. 2d 543 (1983)(supervisory order);
 
cf.
 
Chapman v. Anchor Lumber
, 355 Ill. App. 3d 435, 438 
(2005) (
"
One district of the state 
appellate court
 is 
not bound
 to follow the 
decision
 of another district absent a compelling reason and similar factual circumstances").
  
More overridingly, however, we disagree with defendant's interpretation of 
E.H.
. 

In 
E.H
., after properly determining that the hearsay statements introduced at its defendant’s trial violated the confrontation clause, since the declarant never appeared to testify (
E.H.
, 355 Ill. App. 3d at 576), the court concluded that "[T]he applicability of 
Crawford
 to section 115-10 could be not clearer.  Therefore we find section 115-10 unconstitutional" (
E.H.
, 355 Ill. App. 3d at 577).  However, leading up to this determination, the 
E.H.
 court limited its analysis to the operation of subsection (b)(2)(B), observing that that subsection of the statute allowed for the introduction of a child victim’s hearsay statements when he/she was unavailable and there was some other "corroborative evidence" to support the statement
.  
E.H.
, 355 Ill. App. 3d at 576-77.  The majority declined to address the validity of subsection (b)(2)(A), which was not at issue in that case.  Thus, we do not see 
E.H.
 as purporting to condemn the entirety of section 115-10.  

Furthermore, 
People v. Patterson
, 347 Ill. App. 3d 1044 (2004), and 
People v. Pirwani
, 119 Cal. App. 4th 770, 14 Cal. Rptr. 3d 673 (2004), the other cases on which defendant relies, are also unpersuasive.  Defendant claims that 
Patterson
 struck down a similar statute to section 115-10, section 115-10.2 of the Code of Criminal Procedure (725 ILCS 5/115-10.2 (West 2002) ("Admissibility of prior statements when [the] witness refused to testify despite a court order to testify"))
, 
as facially unconstitutional.  We, however, view this as a misreading of the case.  In 
Patterson
, the un-cross-examined grand jury testimony of the defendant's girlfriend was introduced pursuant to section 115-10.2 when she invoked her right to remain silent at trial.  
Patterson
, 347 Ill. App. 3d at 1049-50.  The 
Patterson
 court, noting that section 115-10.2 incorporated the confrontation requirements set out in 
Ohio v. Roberts
, stated that the section, "focusing as it does on a judicial determination of trustworthiness, can no longer be said to incorporate the relevant constitutional standard."  
Patterson
, 347 Ill. App. 3d at 1050.  The court then held that "[t]he application of 
Crawford
 in [the] case [was] clear" and that the State's use of the girlfriend's grand jury testimony violated the confrontation clause because grand jury testimony was held to be "testimonial" in 
Crawford
, and because defendant never had the opportunity to cross-examine her regarding her statements to the grand jury.  
Patterson
, 347 Ill. App. 3d at 1050-51.  After making that determination, the court stated:  "[W]hat we have said so far essentially moots any discussion of whether the trial court in this case properly applied section 115-10.2."  
Patterson
, 347 Ill. App. 3d at 1051.  Defendant reads the last quoted statement of the court, along with its statement that the statute incorporated the improper 
Roberts
 standard for admissibility, as a statement that section 115-10.2 is facially unconstitutional.  We disagree.  It seems clear to us that, in equally emphasizing the lack of opportunity for cross-examination that took place in its defendant's case, the 
Patterson
 court merely considered the constitutionality of section 115-10.2 as it was applied to its defendant.
  Moreover, we think that if the 
Patterson
 court had meant to actually determine that the statute was facially unconstitutional, it would have clearly used the specific terminology of facial invalidity rather than leaving the reader to derive that holding inferentially. 

We next turn to the California case of 
Pirwani
.  In 
Pirwani
 the court observed that it reviewed a statute that allowed the admission into evidence of police videotaped statements made by unavailable victims of elder abuse solely based on "a showing of particularized guarantees of trustworthiness," as allowed under 
Ohio v. Roberts
, without providing for the confrontation required under 
Crawford
.  
Pirwani
, 119 Cal. App. 4th at 786, 14 Cal. Rptr. 3d at 684 (statute did "not envision or provide for the opportunity to cross examine")
.
  Under those circumstances, the court accepted the California Attorney General's concession that the statute was unconstitutional on its face.  
Pirwani
, 119 Cal. App. 4th at 786, 14 Cal. Rptr. 3d at 684.  That case is inapposite since, unlike our statute, which has a severable provision requiring the declarant to appear for cross-examination, as occurred in this case, in the statute considered in 
Pirwani
 there were no provisions that satisfied the constitutional requirements of the confrontation clause mandated under 
Crawford
.

Lastly, even had S.P.'s statements through her mother, Dr. Purim-Shem-Tov, and Investigator Woodard been admitted in violation of defendant's confrontation rights, we would still find that error to have been harmless.  Violations of constitutional rights may still be found to be harmless if shown to be harmless beyond a reasonable doubt.  
Chapman v. California
, 386 U.S. 18, 24, 17 L. Ed. 2d 705, 710, 87 S. Ct. 824, 828 (1967).  Here, defendant's confession corroborated S.P.'s account of the sexual abuse, and we find these sources of evidence alone to provide overwhelming evidence of defendant's guilt.  S.P. and defendant both described how he would come to her on the couch where she slept at her grandfather's and then digitally penetrate her.  Both S.P. and defendant described how he abused her after they watched 
Soul Train
 and 
Caliente
 together.
  Both described how defendant took her to his bed when he attempted to place his penis in her vagina.  We are unpersuaded by defendant's argument that the fact that S.P.'s account "with respect to the day of the week or the time of day" was either internally inconsistent or inconsistent with the times given by defendant casts a doubt on the occurrence of the abuse in light of the identity of the descriptions of the conduct and the circumstances surrounding those actions.  Further, we note that these minor inconsistencies undercut defendant's insinuation that S.P.'s testimony was coached by the State for, if that were the case, surely the accounts would have been identical.  We are likewise unmoved by defendant's contention that there is a doubt surrounding the validity of his confession in light of his initial denials of wrongdoing and alleged fatigue and hunger during questioning.  In our review of the record, we find nothing to show that the police unreasonably deprived defendant of rest and the record positively reflects that the police provided defendant with food when requested.  Finally, we reject the contention that the fact that "[t]here is no evidence that [defendant] spoke with a lawyer or any family members [during his time in custody and under interrogation]" is of any significance in judging the validity of the confession.  To begin, there is no contention that defendant ever invoked his right to counsel or sought to contact his family.  Moreover, there is no citation to any authority to support the proposition that an adult defendant has a right to consult family members immediately following arrest or to have a family member present during police questioning.

For each of the reasons discussed above, we affirm the judgment of the circuit court.

Affirmed.

McBRIDE, J., and O'MALLEY, J., concur.