*In re* E.H., a Minor (The People of the State of Illinois, Plaintiff-Appellee, v. E.H., Defendant-Appellant).

First District (5th Division) No. 1—01—2776

Opinion filed January 28, 2005.

QUINN, J., dissenting.

Michael J. Pelletier and Elizabeth C. Smith, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb and Janet Doyle, Assistant State's Attorneys, of counsel), for the People.

JUSTICE NEVILLE delivered the opinion of the court:

The minor defendant, E.H., was charged in a petition for adjudication of wardship with two counts each of aggravated criminal sexual abuse and aggravated criminal sexual assault against K.R. and B.R. After a bench trial, E.H. was found delinquent and made a ward of the court. She was also sentenced to 5 years of probation and was required to register as a sex offender for 10 years. E.H. has filed an appeal from the charges against her asserting that her conviction should be reversed because she was not allowed to cross-examine one of her accusers, which was in violation of her constitutional rights under the confrontation clause.[1]

## BACKGROUND

E.H. was charged in a petition for adjudication of wardship with two counts of aggravated criminal sexual abuse and aggravated criminal sexual assault against K.R. and B.R. The charges against E.H. were brought as a result of complaints made by the two children regarding alleged occurrences between June and August of 1999 while E.H. was baby-sitting them at E.H.'s grandmother's home. However, these acts were not reported until one year later, in November of 2000. At the time of the alleged occurrence, E.H. was 13 years old, and her accusers, K.R. and B.R., were five and two years old, respectively. K.R. and B.R. made complaints to their grandmother that E.H. made them lick her vaginal area, buttocks and breasts on four separate occasions. Based upon these charges, E.H. was tried, convicted of the charges against her and adjudicated a ward of the state.

### Testimony at the Section 115—10 Hearing

Prior to trial, the State requested a hearing pursuant to section 115—10 of the Illinois Code of Criminal Procedure of 1963 (725 ILCS

---

[1]"In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defense." U.S. Const., amend. VI.

5/115—10 (West 2000))[2], in order to determine whether the statements made by K.R. and B.R. to their grandmother were admissible. Pursuant to section 115—10, which is an exception to the hearsay rule, the statements of a child under the age of 13 are admissible if they "provide sufficient safeguards of reliability," the witness either testifies at trial or is "unavailable as a witness," and the statements made can be corroborated by other evidence. 725 ILCS 5/115—10 (West 1998).

At the hearing, K.R. and B.R.'s grandmother, Mary Ann R., testified that K.R., B.R. and their mother, Shareen R., had lived with her since October 1999. She stated that on November 14, 2000, she went to check on K.R. and B.R., who were playing in her bedroom, when she heard the girls talking and asked them what they were talking about. K.R. replied that they were talking about E.H. and that she made them suck her "puckets" and lick her "front behind" and "back behind" while E.H. was baby-sitting them. K.R. also told Mary Ann that E.H. made them take their clothes off and lie on top of her. Mary Ann testified that B.R. also told her that E.H. made them suck her "puckets" and lick her "front behind" and "back behind." Mary Ann stated that the girls refer to breasts as "puckets" and to their vaginal area and buttocks as "front behind" and "back behind," respectively.

Mary Ann testified that the following day, on November 15, 2000, while she was in her bedroom, the girls came in to talk to her again

---

[2]Section 115—10 provides in relevant part:

"§ 115—10. Certain hearsay exceptions.

(a) In a prosecution for a physical or sexual act perpetrated upon or against a child under the age of 13, *** the following evidence shall be admitted as an exception to the hearsay rule:

(1) testimony by the victim of an out of court statement made by the victim that he or she complained of such act to another; and

(2) testimony of an out of court statement made by the victim describing *** an element of an offense which is the subject of a prosecution for a sexual or physical act against that victim.

(b) Such testimony shall only be admitted if:

(1) The court finds in a hearing conducted outside the presence of the jury that the time, content, and circumstances of the statement provide sufficient safeguards of reliability; and

(2) The child or institutionalized severely or profoundly mentally retarded person either:

(A) testifies at the proceeding; or

(B) is unavailable as a witness and there is corroborative evidence of the act which is the subject of the statement." 725 ILCS 5/115—10 (West 2000).

and repeated the details they had described the day before. She stated that neither of the girls was hesitant while relating the incident to her and that she did not prompt the girls with questions. Mary Ann testified that K.R. told her the incident occurred during "the summer of 1999." When Mary Ann asked the children why they had waited so long to tell her about the incident, K.R. told her it was because E.H. had threatened them. When Mary Ann asked her why she had not told her mother about the incident, K.R. stated it was because E.H. had "smacked her in the face" and told her she would smack her again if she told her mother. At the conclusion of the grandmother's testimony at the section 115—10 hearing, the court found the statements of K.R. and B.R. to be "reliable" pursuant to section 115—10 and granted the Sate's motion to use the statements at trial.

### Trial Testimony

At trial, Shareen, Mary Ann, K.R., Jesse Terrazas, an investigator with the Chicago police department, Bernice Wilkins, a caseworker with the Department of Children and Family Services (DCFS), and Willie H., E.H.'s grandmother, rendered testimony. B.R. did not testify.

Shareen testified that she had known E.H. since E.H. was five years old. She stated that during the summer of 1999, E.H. baby-sat K.R. and B.R. four times: twice in June, once in July, and once in September. Shareen did not use E.H. as a baby-sitter again after September of 1999. During the time E.H. was baby-sitting the girls, the girls did not make any complaints about E.H. Shareen stated she did not learn about the abuse until her mother told her what the girls said. After her mother told her what the girls said about E.H., Shareen phoned the police. Shareen and her daughters were interviewed at their home by an investigator.

K.R., seven years old at the time of trial, also testified. When asked whether E.H. ever did anything bad to her, K.R. responded, "she made me suck her puckets." K.R. pointed to her chest to show the court what she meant by "puckets." K.R. stated that E.H. has two "puckets" and that another word for "puckets" is "breasts." K.R. also testified that E.H. made her "suck her booty." When asked where her "booty" was, K.R. pointed to her vaginal area and stated that another word for that area was "front butt." K.R. further testified that E.H. also made her suck her "back butt." When asked to show the court where her "back butt" was, K.R. stood up and pointed to her tailbone. When asked if E.H. made her do this more than once, K.R. responded "yes," but she could not remember how many times. K.R. testified that she also saw E.H. do things to her sister, B.R. K.R.

stated that E.H. made B.R. suck her "puckets," "back butt," and "front butt" also. K.R. stated that during this time all three girls were unclothed. K.R. testified that she removed her clothes because E.H. told her to and that E.H. "smacked" her. K.R. answered affirmatively when asked whether she was scared of E.H.

Mary Ann, the girls' grandmother, also testified at trial. Mary Ann retold the circumstances as she told them at the section 115—10 hearing, recounting where the girls were and what they were doing when they first spoke to her about E.H.

Mr. Terrazas, the investigator, testified that he spoke with K.R. and B.R. at their grandmother's house on November 20, 2000. During this discussion, K.R. told him that the incident occurred between June and September of 1999. K.R. told Investigator Terrazas that E.H. made her take her clothes off and that K.R. used the words "front booty" and "back booty" to describe E.H.'s vaginal area and buttocks. When Investigator Terrazas asked K.R. why it had taken her so long to tell anyone about the incident, K.R. responded that it was because E.H. said she would "whip us again." Investigator Terrazas also spoke with B.R., who also used the words "front booty" and "back booty" to describe the vaginal area and buttocks.

Bernice Wilkins, the caseworker with DCFS, testified that she visited Mary Ann's home on January 16, 2001, to check on K.R. and B.R. Ms. Wilkins spoke to Mary Ann about the statements made to her by K.R. and B.R. Mary Ann told Ms. Wilkins that the children did not come and tell her about E.H.; rather, she overheard them talking about it and then questioned them regarding the occurrence.

Ms. H., E.H.'s grandmother, testified that she was home while E.H. baby-sat K.R. and B.R. and that she watched them the entire time. Ms. H. stated that the only time they were out of her sight was when they were in front of the house. She also stated that the girls were not upset to be around E.H. She also testified that about a week prior to E.H.'s arrest, on November 20, 2000, Shareen came over with K.R. and B.R. and asked if she could move into Ms. H.'s home. When Ms. H. told Shareen that she could not move in, Shareen became angry.

At the close of trial, the judge made a finding of delinquency and E.H. became a ward of the court for the aggravated criminal sexual abuse and the aggravated criminal sexual assault of K.R. and B.R. The judge sentenced E.H. to 5 years of probation and required her to register as a sex offender for 10 years. E.H. now appeals from the finding of delinquency and sentence.

E.H. raises three issues on appeal: (1) whether she could be found delinquent of aggravated criminal sexual abuse and aggravated

criminal sexual assault in violation of the one-act, one-crime doctrine where two aggravated criminal sexual abuse adjudications were based on the same physical act for which she was adjudicated delinquent; (2) whether the trial court abused its discretion in admitting B.R.'s statements at trial under the hearsay exception in section 115—10; and (3) whether the Sex Offender Registration Act (730 ILCS 150/1 *et seq.* (West 1998)) is unconstitutional. The issue we will address on appeal is whether B.R.'s out-of-court statements to her grandmother were admissible as evidence at trial. Pursuant to the confrontation clause of the Constitution and the United States Supreme Court's recent holding in *Crawford v. Washington*, 541 U.S. 36, 158 L. Ed. 2d 177, 124 S. Ct. 1354 (2004), we hold that testimonial statements of witnesses absent from trial should be admitted only where the declarant is unavailable and only where the defendant has had a prior opportunity to cross-examine the witness. Therefore, we reverse and remand this case to the trial court.

## Procedural Background

On November 25, 2002, E.H. filed an appellate brief in which she argued that the trial court erred in admitting B.R.'s statements to her grandmother at trial. She argued that the State did not meet its burden of showing that the statements were sufficiently reliable pursuant to section 115—10. 725 ILCS 5/115—10 (West 1998).

On March 8, 2004, the United States Supreme Court held in *Crawford v. Washington*, 541 U.S. 36, 158 L. Ed. 2d 177, 124 S. Ct. 1354 (2004), that based upon the confrontation clause, testimonial statements of witnesses absent from trial should be admitted only where the declarant is unavailable and only where the defendant has had a prior opportunity to cross-examine the witness. The Court further renounced the "unpredictable" and "amorphous" test enunciated in *Ohio v. Roberts*, 448 U.S. 56, 66, 65 L. Ed. 2d 597, 608, 100 S. Ct. 2531, 2539 (1980), that hearsay evidence is admissible if it demonstrates adequate indicia of reliability.

Pursuant to the *Crawford* decision, the defendant filed a motion to cite the case as additional authority in support of her appeal, which was granted on April 9, 2004. Relying on *Crawford* in her motion, E.H. argued that her constitutional right to cross-examine B.R. was violated and that her conviction must be reversed.

On May 7, 2004, without addressing *Crawford*, this court entered an order affirming the trial court's decision. *In re E.H.*, No. 1—01—2776 (May 7, 2004) (unpublished order under Supreme Court Rule 23). In that order, although we reasoned that under section 115—10, the time, content and circumstances of B.R.'s statements did not

provide sufficient "safeguards of reliability" (see 725 ILCS 5/115—10 (West 1998)), we held that B.R.'s statements fell under the rubric of harmless error, utilizing the abuse of discretion standard of review.

On May 28, 2004, the defendant filed a petition for rehearing, in which she reiterated the holding in *Crawford* and stated that we failed to apply *Crawford* in our analysis and ruling. Once again, in her petition, she pointed out the Court's ruling in *Crawford* that "where testimonial statements are at issue, the only indicium of reliability sufficient to satisfy constitutional demands is confrontation." See *Crawford*, 541 U.S. 36, 158 L. Ed. 2d 177, 124 S. Ct. 1354. The defendant further argued that her petition should be granted because the *Crawford* decision renders section 115—10 unconstitutional as the reliability requirements were rejected. Finally, she argued that we applied the incorrect standard of review in determining whether B.R.'s statements to her grandmother were harmless error.

On October 16, 2004, the State filed an answer to the defendant's petition for rehearing. The State argued that the "Respondent's position is based on a fundamentally flawed interpretation of the confrontation clause and the strictures set forth in *Crawford*" and that the "confrontation clause has no application to the instant case, because the admission of [B.R.'s] outcry did not implicate the confrontation clause." Considering the *dicta* in *Crawford* concerning what may constitute "testimonial" versus "nontestimonial" evidence, the State asserts that "when the 'witness' is giving 'testimony' out-of-court *** the hearsay declarant himself *must be aware of the fact that he is 'bearing witness' against the accused* for his hearsay statement to even be considered 'testimonial' under *Crawford*." (Emphasis added.) In addition to understanding that he/she is "bearing witness against" the accused, the State argues, the declarant must also understand that he/she is *"offering a solemn declaration or affirmation *** for the purpose of establishing or proving some fact."* (Emphasis added.) The State concludes that "an objectively reasonable declarant must be aware *** that he is providing evidence that will later be used against the accused in a criminal trial."

Based upon the defendant's petition, which we have granted, the May 7, 2004, order has been vacated. We now address the defendant's appeal in light of the confrontation clause and the *Crawford* decision. Pursuant to the confrontation clause, we hold that the defendant had a constitutional right to confront her accuser and that because she did not have an opportunity to do so in this case, her constitutional rights were violated. U.S. Const, amend. VI.

### ANALYSIS

■ The confrontation clause provides: "In all criminal prosecutions, the accused shall enjoy the right *** to be confronted with the witnesses against him ***." U.S. Const., amend. VI. Utilizing the sixth amendment as a premise for its ruling and acknowledging the original intent of the Framers of the Constitution, the *Crawford* Court reasoned that the testimonial statements of a witness who did not appear at trial would not be admissible unless he was unavailable to testify and the defendant had a prior opportunity for cross-examination. *Crawford*, 541 U.S. at 51-53, 158 L. Ed. 2d at 192-94, 124 S. Ct. at 1364-66. In its opinion, the Court specifically renounced its rationale enunciated in *Ohio v. Roberts*, 448 U.S. 56, 66, 65 L. Ed. 2d 597, 608, 100 S. Ct. 2531, 2539 (1980), which predicated the admissibility of hearsay evidence on whether it "demonstrated adequate indicia of reliability." *Crawford*, 541 U.S. at 56-59, 158 L. Ed. 2d at 196-97, 124 S. Ct. at 1367-69. The Court reasoned that: "The framework [of the general reliability exception] is so unpredictable that it fails to provide meaningful protection from even core confrontation violations. Reliability is an amorphous, if not entirely subjective, concept." *Crawford*, 541 U.S. at 63, 158 L. Ed. 2d at 200, 124 S. Ct. at 1371.

More importantly, the Court opined: "The unpardonable vice of the *Roberts* test *** is not its unpredictability, but its demonstrated capacity to admit core testimonial statements that the confrontation clause plainly meant to exclude." *Crawford*, 541 U.S. at 63, 158 L. Ed. 2d at 200, 124 S. Ct. at 1371.

The quagmire we are left in, however, is that the *Crawford* Court does not pinpoint a specific definition of the amorphous concept of what "testimonial statements" might include. The Court does provide instruction that, at a minimum, this testimony encompasses prior testimony at a preliminary hearing, before a grand jury or at a former trial. *Crawford v. Washington*, 541 U.S. 36, 158 L. Ed. 2d 177, 124 S. Ct. 1354 (2004). The Court also includes statements taken by the police during interrogations under the umbrella of testimonial statements. *Crawford*, 541 U.S. at 52-53, 68, 158 L. Ed. 2d at 193-94, 203, 124 S. Ct. at 1364, 1374. In *dicta*, the *Crawford* Court also articulated various formulations of what the core class of "testimonial statements" might include, *i.e.*, " 'ex parte in-court testimony' " (quoting Brief for Petitioner at 23), " 'extrajudicial statements' " (quoting *White v. Illinois*, 502 U.S. 346, 365, 116 L. Ed. 2d 848, 865, 112 S. Ct. 736, 747 (1992)); and " 'statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial' " (quoting Brief for National Association of Criminal Defense Lawyers as

*amici curiae* at 3). *Crawford*, 541 U.S. at 52, 158 L. Ed. 2d at 193, 124 S. Ct. at 1364. Remaining silent on its acquiescence to any of these formulations, however, the Court states that *"we leave for another day any effort to spell out a comprehensive definition of 'testimonial.'"* (Emphasis added.) *Crawford*, 541 U.S. at 68, 158 L. Ed. 2d at 203, 124 S. Ct. at 1374. Therefore, as Justice Rehnquist's concurring opinion in the judgment points out, and we are in agreement, what constitutes "testimonial statements" versus nontestimonial statements remains somewhat esoteric. *Crawford*, 541 U.S. at 68-76, 158 L. Ed. 2d at 203-08, 124 S. Ct. at 1374-78 (Rehnquist, C.J., concurring, joined by O'Connor, J.).

■ Although some uncertainty remains regarding the exact definition of "testimonial statements," *we are certain* that, in this case, B.R.'s statement to her grandmother falls within the purview of the ruling of *Crawford* and is governed by the protections of the confrontation clause. It is true that certain types of hearsay statements, *i.e.*, "an offhand, overheard remark," may not qualify as statements at which the confrontation clause was directed, but it does apply against "those who bear testimony." *Crawford*, 541 U.S. at 51, 158 L. Ed. 2d at 193, 124 S. Ct. at 1364. Here, the declarant, B.R., bore accusatory testimony against E.H. which was offered to prove the truth of the matter asserted, specifically, that E.H. sexually assaulted her.

The treatise, *Wigmore on Evidence*, section 479, also lends support to our position. Section 479 states that "any *assertion*, whether made in court or not, may be testimonial evidence. *** *Any* assertion, taken as the basis of an inference to the existence of the matter asserted, *is testimony*, whether made in court or not." (Emphasis added and in original.) J. Wigmore, Evidence § 479, at 640 (1979). B.R.'s statement to her grandmother was an assertion used as the *basis* of the inference to establish the fact that she was sexually assaulted by E.H. More importantly, however, B.R.'s statement went beyond simply being the "basis of the inference" that she was sexually assaulted, but was the impetus for filing the petition against E.H. and it was offered at E.H.'s trial to prove the truth of the matter asserted.

In this case, B.R. never actually made a statement to a "governmental official" as contemplated in *Crawford*. However, we believe that this fact alone does not remove this case from the scrutiny of the confrontation clause and whether it has been violated. In a footnote, the *Crawford* Court reiterates that *"when the declarant appears for cross-examination at trial*, the confrontation clause places no constraints at all on the use of his prior testimonial statements," and that "[t]he Clause does not bar admission of [the] statement *so long as the declarant is present at trial to defend or explain it*." (Emphasis

added.) *Crawford*, 541 U.S. at 60 n.9, 158 L. Ed. 2d at 197 n.9, 124 S. Ct. at 1369 n.9. In this case, the declarant, B.R., did not appear for cross-examination at trial and was not present at trial to defend or explain her accusations against the defendant. B.R. made an out-of-court statement to her grandmother, which was offered to prove the matter asserted, and the grandmother testified to that out-of-court statement in court. The admission of the accuser's out-of-court testimony by permitting another witness, the grandmother, to testify for the accuser is exactly what the Framers of the Constitution were endeavoring to prohibit with the sixth amendment. See U.S. Const., amend VI. Therefore, E.H. had a constitutional right to confront her accuser.

In fact, the recent ruling in *In re T.T.*, 351 Ill. App. 3d 976 (2004), which applied *Crawford*, lends support to our ruling in its analysis of the admissibility of portions of an examining physician's testimony at trial. In *In re T.T.*, the court allowed some "nontestimonial" statements made to the examining physician by the victim, but disallowed other "testimonial statements" as violative of the confrontation clause. The court reasoned that the victim's statements regarding the nature of the alleged attack, the physical exam, and complaints of pain or injury "were not accusatory against respondent at the time made and, thus, do not trigger enhanced protection under the confrontation clause." *In re T.T.*, 351 Ill. App. 3d at 993. However, the *In re T.T.* court did not allow the victim's *"accusatory statements* [to the examining physician] *identifying respondent as the perpetrator* [because those statements] *implicate[d] the core concerns protected by the confrontation clause."* (Emphasis added.) *In re T.T.*, 351 Ill. App. 3d at 993. When the content of the victim's statement concerned fault or identity, then such testimonial statements were only admissible if the declarant testified at trial and was subject to cross-examination. *In re T.T.*, 351 Ill. App. 3d at 993.

The *In re T.T.* court specifically addressed the issue of whether testimonial evidence presented to a nongovernmental official can still violate the confrontation clause. The court made the distinction between the physician, who was referred to the victim by DCFS (a governmental agency), and governmental officers such as the police or DCFS investigators. *In re T.T.*, 351 Ill. App. 3d at 993-94. "In contrast to government officers like the police or DCFS investigators, medical personnel who treat and diagnose sexual assault victims do not take on a similar investigatory or prosecutorial function." *In re T.T.*, 351 Ill. App. 3d at 993. The *In re T.T.* court focused on the nature of the testimony in determining whether it is violative of an accused's right to confrontation, as opposed to the official or unofficial nature of the

person whom the State wants to testify to the declarant's out-of-court statement.

In the case at bar, the out-of-court statements of B.R., which accused E.H. of making her suck her "puckets" and "lick her front behind" and "back behind," were statements concerning the fault and identity of E.H. and these "accusatory statements" invoke the protections of the confrontation clause. We believe it is the nature of the testimony rather than the official or unofficial nature of the person testifying that determines the applicability of *Crawford* and the confrontation clause. Therefore, we find that because E.H. did not have an opportunity to cross-examine B.R., her accuser, regarding B.R.'s statements implicating her in a crime, E.H.'s constitutional rights were violated and she is entitled to a new adjudicatory hearing.

Although we have considered the State's arguments, based upon the foregoing analysis, we cannot agree that B.H.'s out-of-court statements do not trigger the protections of the confrontation clause. The confrontation clause guarantees an accused the right to confront his/her accuser regardless of the accuser's or declarant's consciousness of "bearing witness" or "offering a solemn declaration or affirmation *** for the purpose of establishing or proving some fact." See U.S. Const., amend. VI. In fact, it is our opinion that the declarant's state of mind is hardly a consideration when determining whether there has been a confrontation clause violation. If that were the case, the right of the accused to confrontation would be contingent upon the state of mind of the declarant. The State's argument is incompatible with the holding in *Crawford* and the confrontation clause.

In addition, as the defendant correctly points out in her petition, an incorrect standard of review was applied to the "harmless error" test because we did not previously address the issues on appeal in light of the constitutional implications. Under *Chapman v. California*, 386 U.S. 18, 17 L. Ed. 2d 705, 87 S. Ct. 824 (1967), a constitutional error is harmless error if it is harmless beyond a reasonable doubt. " 'The question is whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction.' " *Chapman*, 386 U.S. at 23, 17 L. Ed. 2d at 710, 87 S. Ct. at 827, quoting *Fahey v. Connecticut*, 375 U.S. 85, 86-87, 11 L. Ed. 2d 171, 173, 84 S. Ct. 229, 230 (1963). See also *People v. Knippenberg*, 66 Ill. 2d 276, 287 (1977). The *Chapman* Court recognized that "harmless-error rules can work very unfair and mischievous results" unless they are narrowly circumscribed. *Chapman*, 386 U.S. at 22, 17 L. Ed. 2d at 710, 87 S. Ct. at 827. However, the Court emphasized that "[a]n error in admitting plainly relevant evidence which possibly influenced the jury adversely to a litigant cannot *** be conceived of as harmless." *Chapman*, 386 U.S. at 23-24, 17 L. Ed. 2d at 710, 87 S. Ct. at 828.

■ We find that the error in this case was not harmless beyond a reasonable doubt. First, there is a reasonable possibility that allowing B.R.'s grandmother to testify to the out-of-court statements made by B.R. might have contributed to E.H.'s conviction. See *Chapman*, 386 U.S. at 23, 17 L. Ed. 2d at 710, 87 S. Ct. at 827, quoting *Fahy v. Connecticut*, 375 U.S. at 86-87, 11 L. Ed. 2d at 173, 84 S. Ct. at 230 (when determining whether there was harmless error, the question is not whether there was sufficient evidence on which the petitioner could have been convicted without the evidence complained of, but whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction).

Second, the other evidence in this case was not so overwhelming that it would support E.H.'s conviction. See *People v. Wilkerson*, 87 Ill. 2d 151, 157 (1981), citing *Milton v. Wainwright*, 407 U.S. 371, 33 L. Ed. 2d 1, 92 S. Ct. 2174 (1972). Although K.R.'s testimony at trial was similar to B.R.'s statements to her grandmother, we cannot ignore the testimonial evidence presented in the defendant's case in chief. At trial, E.H.'s grandmother testified that whenever the two children came to her home, she would always keep an eye on them and the only time they would be out of her sight would be when they were outside in front of her house. We find that the admission of B.R.'s out-of-court statements violated the confrontation clause in the United States Constitution and contributed to the defendant's convictions. Thus, we conclude that the confrontation clause errors in this case were not harmless beyond a reasonable doubt.

## CONSTITUTIONALITY OF SECTION 115—10

■ Finally, we address the constitutionality of section 115—10 under *Crawford* and the confrontation clause. Once again, the confrontation clause in the sixth amendment to the United States Constitution provides: "In all criminal prosecutions, the accused shall enjoy the right *** to be confronted with the witnesses against him ***." U.S. Const., amend. VI. We find that *Crawford* renders section 115—10 unconstitutional. Whether a statute is constitutional is a question of law reviewed *de novo*. *People v. McClanahan*, 191 Ill. 2d 127, 132 (2000).

The language of section 115—10 essentially allows into evidence the out-of-court statements of a child under the age of 13, made to another person, if the court finds that the statements provide "sufficient safeguards of reliability" after considering the time, content and circumstances within which the statements were made. 725 ILCS 5/115—10(b)(1) (West 2000). Also, if the child does not testify at the proceeding, it must be shown that the child is truly unavailable and

there must be some other corroborative evidence of the act. 725 ILCS 5/115—10(b)(2)(A), (b)(2)(B) (West 2000). In other words, section 115—10 seeks to admit a declarant's out-of-court statement into evidence, without the declarant being present in court, as long as there is some other evidence that corroborates the out-of-court statement and the statement is deemed reliable. *Crawford* clearly rejects this hearsay exception.

*Crawford rejects the admissibility of testimonial hearsay as violative of the confrontation clause even if the witness is unavailable,* **unless** there was a prior opportunity for cross-examination. *Crawford,* 541 U.S. at 61, 158 L. Ed. 2d at 203, 124 S. Ct. at 1374. In fact, *Crawford* leaves no ambiguity regarding its resistance to relying on "reliability" as a barometer for the admissibility of an out-of-court statement where the declarant is unavailable. The Court specifically stated:

> "[W]e do not think the Framers meant to leave the Sixth Amendment's protection to the vagaries of the rules of evidence much less to amorphous notions of 'reliability.' *** Admitting statements deemed reliable by a judge is fundamentally at odds with the right of confrontation. To be sure, the Clause's ultimate goal is to ensure reliability of evidence ***. It commands, not that evidence be reliable, but that reliability be assessed in a particular manner: by testing in the crucible of cross-examination." *Crawford,* 541 U.S. at 61, 158 L. Ed. 2d at 199, 124 S. Ct. at 1370.

"Where testimonial statements are at issue, the only indicium of reliability sufficient to satisfy constitutional demands is the one the constitution actually prescribes: confrontation." *Crawford,* 541 U.S. at 68-69, 158 L. Ed. 2d at 203, 124 S. Ct. at 1374.

The applicability of *Crawford* to section 115—10 could be no clearer. Therefore, we find section 115—10 unconstitutional.

Based upon the foregoing, E.H.'s finding of delinquency is reversed and this case is remanded to the trial court for an adjudicatory hearing consistent with this opinion. In so doing, we find that the evidence was sufficient to support the defendant's convictions, so that double jeopardy considerations do not prevent retrial. *People v. Oliviera,* 164 Ill. 2d 382, 393, 647 N.E.2d 926 (1995).

Reversed and remanded with directions.

REID, P.J., concurs.

JUSTICE QUINN, dissenting:

I respectfully dissent. In her petition for rehearing, defendant acknowledges that this court found that B.R.'s statements failed to

meet the admissibility requirements of section 115—10. However, the petition asserts that this court should have relied upon the Supreme Court's holding in *Crawford v. Washington*, 541 U.S. 36, 158 L. Ed. 2d 177, 124 S. Ct. 1354 (2004). After oral argument, this court permitted defendant to cite *Crawford* as additional authority. Our original Rule 23 dispositional order, authored by Justice Hartigan, did not address *Crawford*.

Generally, a reviewing court should not reach constitutional issues if the case can be determined on other grounds. *People v. Nash*, 173 Ill. 2d 423, 432 (1996); *City of Chicago v. Powell*, 315 Ill. App. 3d 1136, 1140 (2000). I initially strongly agreed with the majority's desire to address the *Crawford* issue in this case, as I think that any intelligent discourse on how to interpret significant new cases advances the goal of providing the trial courts and other courts of review with the benefit of our analysis. However, our supreme court recently pointed out a significant drawback to this principle, holding: "the appellate court's insistence on addressing the constitutional questions which arose from the United State Supreme Court's decision in *Apprendi v. New Jersey*, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000), led to scores of opinions in which opposite conclusions were reached. Compare *Rush*, 322 Ill. App. 3d 1014, with *People v. Adams*, 333 Ill. App. 3d 171 (2002)." *People v. Jones*, 213 Ill. 2d 498, 506 (2004). While *Jones* involved whether or not the waiver language in section 122—3 of the Post-Conviction Hearing Act (725 ILCS 5/122—3 (West 2000)) precluded the appellate court from addressing claims raised for the first time on appeal, the supreme court's admonition is well taken even when the issue has not been waived but is, instead, addressed in *dicta*.

Defendant's petition for rehearing correctly asserts that *Crawford* applies to this case. Our supreme court has consistently held that judicial opinions announcing new constitutional rules are applicable to criminal cases pending on direct review at the time the new constitutional rule is declared. *People v. Ford*, 198 Ill. 2d 68, 73 (2001), citing *Griffith v. Kentucky*, 479 U.S. 314, 93 L. Ed. 2d 649, 107 S. Ct. 708 (1987). Other cases have similarly held that *Crawford* applies to cases on direct review. *People v. Martinez*, 348 Ill. App. 3d 521, 533 (2004); *People v. Thompson*, 349 Ill. App. 3d 587, 594 (2004).

In *Martinez*, a division of the First District held: "It is important to note that in determining whether a prior out-of-court statement is admissible, the proponent of the statement first must meet the requirements of the applicable statutory hearsay exception as set out in section 115—10 *et seq.* (725 ILCS 5/115—10 *et seq.* (West 2002)). The holding in *Crawford* should be considered only after the court

determines the proffered statement complies with the requirements of the applicable statute." *Martinez*, 348 Ill. App. 3d at 535.

In our original dispositive order, we held that B.R.'s statements were admitted in violation of sections 115—10(a)(2), (b)(1), and (b)(2)(B) (725 ILCS 5/115—10 (a)(2), (b)(1), (b)(2)(B) (West 2000)). In her petition for rehearing, defendant does not quarrel with this holding, but she still asks us to address the holding in *Crawford*. I first note that even if B.R.'s statements did not violate *Crawford*, they would still not be admissible.

In support of their holding that B.R.'s grandmother's testimony recounting B.R.'s outcry statements was violative of *Crawford*, the majority rely primarily upon the holding in *In re T.T.*, 351 Ill. App. 3d 976 (2004). The court in *In re T.T.* considered *Crawford*'s effect on the victim's statements during a medical examination. Approximately six months after the offense, DCFS directed the victim to obtain a forensic medical exam by a doctor in the child protection unit of a hospital. During the exam, the doctor questioned the victim regarding the offense, and the victim made statements regarding what happened to her and identifying her baby-sitter's son as the offender.

The appellate court easily dismissed the defendant's argument distinguishing between treating and examining physicians, stating that the exam was for a diagnostic purpose and the victim's statements were the by-product of substantive medical activity. Similarly, the court explicitly rejected the claim that the doctor acted as the government's agent, regardless of the fact that the medical exam was the result of a DCFS referral. The court noted that "*Crawford* indicates that governmental involvement in some fashion in the creation of a formal statement is necessary to render the statement testimonial in nature." *In re T.T.*, 351 Ill. App. 3d at 988.

The court then concluded that "a victim's statements to medical personnel regarding 'descriptions of the cause of symptom, pain or sensations, or the inception or general character of the cause or external source thereof' (725 ILCS 5/115—13 (West 2000)) are not testimonial," but that the victim's statements identifying the offender were testimonial. *In re T.T.*, 351 Ill. App. 3d at 993. The majority correctly characterize this portion of the holding in *In re T.T.* as focusing "on the nature of the testimony in determining whether it is violative of an accused's right to confrontation, as opposed to the official or unofficial nature of the person whom the State wants to testify to the declarant's out-of-court statement." 355 Ill. App. 3d at 574-75.

In *People v. West*, 355 Ill. App. 3d 28 (2005), the court followed the holding in *In re T.T.*, and held that the nontestifying sexual assault victim's statements to the emergency room nurse and doctor which

concerned the identity of her attacker " 'implicate the core concerns protected by the confrontation clause.' *In re T.T.*, 351 Ill. App. 3d at 993." *West*, 355 Ill. App. 3d at 37-38. However, the *West* court went on to find that the statements made by the victim to a citizen (Jackson) who opened her door in response to the victim's (M.M.) pleas for help were not violative of *Crawford*: "Jackson was no more than a concerned citizen and \*\*\* her actions in relaying information to the 911 dispatcher do not transform her into an agent of the government. When M.M. appeared at Jackson's door, she was crying for help. Jackson took M.M. into her home and asked her what had happened. The purpose behind Jackson's questions was clearly altruistic and, as such, we fail to see how she was acting as a governmental officer seeking evidence in anticipation of a potential criminal prosecution." *West*, 355 Ill. App. 3d at 41.

I believe that the *T.T.* and *West* courts' determination that the victims' statements to the medical personnel lacked governmental involvement should have ended the analysis under *Crawford*.[3] The great weight of authority supports the proposition that where the proffered statements were not made to a governmental actor such as law enforcement (or their proxy), under *Crawford* the statements cannot be testimonial regardless of their content. Although the *Crawford* Court did not fully define "testimonial," it did provide three formulations of the core class of testimonial statements which the Court of Appeals for the First Circuit described as follows:

"In the first, testimonial statements consist of 'ex parte in-court testimony or its functional equivalent—that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine or similar pretrial statements that declarants would reasonably expect to be used prosecutorially.' [Citation.] The second formulation described testimonial statements as consisting of 'extrajudicial statements ... contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions.' [Citations.] Finally, the third explained that testimonial statements are those 'made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.' [Citation.]

---

[3]While I disagree with the holdings in the decisions in *In re T.T.* and *West* which precluded identification portions of the victims' statements to medical personnel as violative of *Crawford*, those holdings may have been correct under the medical treatment exception to the hearsay rule (725 ILCS 5/115—13 (West 2002)). See *People v. Falaster*, 173 Ill. 2d 220 (1996) (stating when medical personnel may testify as to a victim's statements identifying her attacker).

While the Court declined to settle on a single formulation, it noted that, '[w]hatever else the term [testimonial] covers, it applies ... to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations. These are the modern *** abuses at which the Confrontation Clause was directed.' " *Horton v. Allen*, 370 F.3d 75, 84 (1st Cir. 2004), quoting *Crawford*, 541 U.S. at 51-52, 68, 158 L. Ed 2d at 193, 203, 124 S. Ct. at 1364, 1374.

In *Horton*, the Court of Appeals rejected the defendant's argument that the admission of a statement made to a civilian acquaintance (Garcia) violated *Crawford*: "In light of these formulations, Christian's statements do not qualify as testimonial. They were not ex-parte in-court testimony or its equivalent; were not contained in formalized documents such as affidavits, depositions, or prior testimony transcripts; and were not made as part of a confession resulting from custodial examination. Rather, Christian's statements were made during a private conversation with Garcia." *Allen*, 370 F.3d at 84.

Citing *Horton*, the Nebraska Supreme Court, in *State v. Vaught*, 268 Neb. 316, 682 N.W.2d 284 (2004), held that the statement of a child victim of sexual abuse did not fit any of the above formulations, nor did it share characteristics of these formulations. Consequently, the court held that the victim's statement to an emergency room physician was not a "testimonial" statement under *Crawford*, even though the child's statement identified the perpetrator, the half brother of the child's mother. *Vaught*, 268 Neb. at 325, 682 N.W.2d at 291.

In *State v. Manuel*, 275 Wis. 2d 146, 685 N.W.2d 525 (App. 2004), the Court of Appeals of Wisconsin rejected the defendant's argument that a police officer's testimony recounting the statement of the girlfriend of an eyewitness (Stamps), which statement in turn related that Stamps saw the defendant shoot the victim, was violative of *Crawford*. "Despite the [*Crawford*] Court's failure to provide a 'comprehensive definition,' we have little difficulty concluding that Stamps' statement to his girlfriend is *not* 'testimonial' in nature. The statement was not made to an agent of the government or to someone engaged in investigating the shooting. The statement thus does not fall within any of the categories of testimonial statements expressly identified in *Crawford* (prior trial, preliminary-hearing and grand-jury testimony and statements made during police interrogations)." (Emphasis in original) *Manuel*, 275 Wis. 2d at 161-62, 685 N.W.2d at 532. I would point out that, while I agree that Stamps' statement to his girlfriend clearly does not come under the penumbra of *Crawford*, the court of appeals did not address how the statement of his girlfriend to the police was not violative of *Crawford* where the girlfriend did not testify.

In *People v. Garrison*, 109 P.3d 1009, 1012 (Colo. App. 2004), the Colorado Court of Appeals held that a murder victim's hearsay statements to his training manager that "an old friend of his was calling and threatening to kill him" were properly admitted at the defendant's trial under the excited utterance exception to the hearsay rule. The court also rejected the defendant's claim under *Crawford*: "Nothing in the record indicates that the victim's statements to the training manager would constitute testimonial hearsay. The statements were not made to the police and there is no indication that the manager was acting as a police agent. Thus, we conclude that *Crawford* does not apply here." *Garrison*, slip op. at 3.

The Colorado Court of Appeals also addressed *Crawford* in *People v. Compan*, 100 P.3d 533 (Colo. App. 2004), *cert. granted*, No. 04 SC 422, (Colo. October 25, 2004). In *Compan*, the victim asked a friend to pick her up at her home because her husband, the defendant, was beating her. Upon getting into the friend's car, the victim reiterated that the defendant had just beaten her. The friend took the victim to the hospital for treatment, where the victim was interviewed by the police. When the victim failed to appear at the defendant's trial, the prosecution called the victim's friend. The friend testified to the victim's statements under the excited utterance exception to the hearsay rule. The court of appeals first considered the holding in *Crawford*.

> "Here, we conclude that the victim's statements are not testimonial within the meaning of *Crawford*. The statements were made to the victim's friend, not to a law enforcement or judicial officer. Although the statements were not 'casual or off-hand' because the victim was distraught, they do not qualify as the kind of 'solemn or formal' declarations that the *Crawford* majority associated with testimonial statements. The victim's statements were not made for the purpose of establishing facts in a subsequent proceeding.
>
> Because the statements are not testimonial their admission does not violate the United States Constitution under the rule of *Crawford*." *Compan*, 100 P.3d at 538.

In *McKinney v. Bruce*, No. 02—3248 JAR (D. Kan. July 29, 2004), the United States District Court in Kansas considered whether a murder victim's (Miller) statements to his uncle were violative of *Crawford*: "Miller's statements that 'Les' [a defendant] wanted to talk to him and that he was leaving to go see what 'Les' wanted [are] non-testimonial. The statements were not *ex parte* in-court testimony, contained in formalized documents, nor were they the result of a police interrogation. Instead, they were statements made in a private conversation between Miller and his uncle." *Bruce*, slip op. at 12. The

court further opined that hearsay statements admitted under the state of mind exception are not made under circumstances which would lead an objective person to believe that the statements would be available for use at a later trial.

In *Demons v. State*, 277 Ga. 724, 595 S.E.2d 76 (2004), the Georgia Supreme Court considered whether statements admitted under the necessity exception and the *res gestae* exception to the hearsay rule violated *Crawford*. The court found that the "necessity" statement in which the murder victim told a coworker that the defendant was going to kill him was not testimonial "as it was made in a conversation with a friend, before the commission of any crime." *Demons*, 277 Ga. at 727-28, 595 S.E.2d at 80. The court similarly found that the *"res gestae"* statement in which the murder victim told a different coworker that the defendant was going to kill him was not "testimonial" under *Crawford*. *Demons*, 277 Ga. at 728-29, 595 S.E.2d at 81.

In her response to the State's reply to her petition for rehearing, defendant cites to *In re Rolandis G.*, 352 Ill. App. 3d 776 (2004). This case actually supports the State's position that B.R.'s grandmother's testimony was not violative of *Crawford*. *In re Rolandis G.* did hold that the minor victim's statements to a police officer and a child advocacy worker concerning a sexual assault were testimonial in nature. Consequently, those statements were inadmissible under the confrontation clause where the juvenile offender's counsel was unable to cross-examine the victim. However, the appellate court also held that the minor victim's statements to his mother concerning the sexual assault were not "testimonial" under *Crawford*. *In re Rolandis G.*, 352 Ill. App. 3d at 783. The foregoing cases demonstrate that where the proffered statements were not made to a governmental actor, such as law enforcement or their proxy, the statements are not "testimonial" under *Crawford*. Consequently, B.R.'s statements to her grandmother were not testimonial under *Crawford*.

I also strongly disagree with the majority's holding that section 115—10 is unconstitutional. In support of this holding, the majority posit: "section 115—10 seeks to admit a declarant's out-of-court statement into evidence, without the declarant being present in court, as long as there is some other evidence that corroborates the out-of-court statement and the statement is deemed reliable." 355 Ill. App. 3d at 577. As the majority point out in footnote 2, section 115—10(b) permits into evidence testimony of an out-of-court statement made by the victim of a sexual assault who is under 13 years of age, describing an element of the offense for which the defendant is being prosecuted, but such testimony shall only by admitted if (1) the court finds "that the time, content, and circumstances of the statement provide suf-

ficient safeguards of reliability; *and* (2) *The child \*\*\* (A) testifies at the proceeding.*" (Emphasis added.) 725 ILCS 5/115—10(b)(1), (b)(2)(A) (West 2000). It is abundantly clear that when a child victim testifies pursuant to section 115—10(b)(2)(A), the requirements of *Crawford* are met. As the majority point out, " 'when the declarant appears for cross-examination at trial, the confrontation clause places no constraints at all on the use of his prior testimonial statements' " (emphasis omitted), and " '[t]he Clause does not bar admission of [the] statement so long as the declarant is present at trial to defend or explain it.' " (Emphasis omitted.) 355 Ill. App. 3d at 573, quoting *Crawford*, 541 U.S. at 60 n.9, 158 L. Ed. 2d at 197 n.9., 124 S. Ct. at 1369 n.9 Because of this holding, defendant does not assert that K.R.'s outcry statements to the grandmother were violative of *Crawford*.

"A statute is facially unconstitutional only if ' "no set of circumstances exists under which the Act would be valid." ' " *People v. Jackson*, 199 Ill. 2d 286, 301 (2002), quoting *In re C.E.*, 161 Ill. 2d 200, 210-11 (1994), quoting *United States v. Salerno*, 481 U.S. 739, 745, 95 L. Ed. 2d 697, 707, 107 S. Ct. 2095, 2100 (1987). The holding in *Crawford* does permit the admission into evidence of coconspirator statements (*Crawford*, 541 U.S. at 57, 158 L. Ed. 2d at 196, 124 S. Ct. at 1367) and dying declarations (*Crawford*, 541 U.S. at 56 n.6, 158 L. Ed. 2d at 195 n.6, 124 S. Ct. at 1367 n.6). The majority also accepted the "rule of forfeiture by wrongdoing," which extinguishes confrontation claims on "essentially equitable grounds." *Crawford*, 541 U.S. at 62, 158 L. Ed. 2d at 199, 124 S. Ct. at 1370. Further, the majority discussed whether spontaneous declarations would fall under the ambit of *Crawford*, 541 U.S. at 58, 158 L. Ed. 2d at 196, 124 S. Ct. at 1368, but left that issue for another day. Chief Justice Rehnquist's concurrence posited that statements made in the course of procuring medical services have been treated as an exception to the confrontation requirement as well. *Crawford*, 541 U.S. at 74, 158 L. Ed. 2d at 207, 124 S. Ct. at 1377 (Rehnquist, C.J., concurring, joined by O'Connor, J.).

In addition to the above exceptions, if the statement at issue is not "testimonial," then *Crawford* does not limit the admissibility of the statement:

> "Where nontestimonial hearsay is at issue, it is wholly consistent with the Framer's design to afford the States flexibility in their development of hearsay law—as does *Roberts*, and as would an approach that exempted such statements from Confrontation Clause scrutiny altogether." *Crawford*, 541 U.S. at 68, 158 L. Ed. 2d at 203, 124 S. Ct. at 1374.

Based on the above exceptions and language found in *Crawford*, it is clear that "set[s] of circumstances exist" under which many of our

statutory exceptions to the hearsay rule would be valid. Consequently, those statutory exceptions would not be unconstitutional on their face, but only as applied. A statute would be unconstitutional as applied when the statute permits a statement that is "testimonial" under *Crawford* to be admissible into evidence without requiring both that the declarant be unavailable and the existence of a prior opportunity for cross-examination.

Another important reason for our courts to reject the argument that section 115—10 and other similar statutes are unconstitutional is that these statutes provide additional protections to the defendants in criminal cases. The instant case is an excellent example of this. While B.R.'s outcry statements to her grandmother were not testimonial under *Crawford*, they were still inadmissible because they did not comply with the reliability requirements of section 115—10(b)(1). 725 ILCS 5/115—10(b)(1) (West 2000). This result is similar to that reached in *People v. Miles*, 351 Ill. App. 3d 857, 867 (2004).

Defendant's petition for rehearing also asks this court to reconsider the analysis we employed in determining that the admission of B.R.'s outcry statements constituted harmless error.

In *People v. Johnson*, 116 Ill. 2d 13, 28 (1987), our supreme court held: "Confrontation errors, though constitutional violations, do not automatically warrant reversal (see *Lee v. Illinois* (1986), 476 U.S. 530, 90 L. Ed. 2d 514, 106 S. Ct. 2056; *Delaware v. Van Arsdall* (1986), 475 U.S. 673, 89 L. Ed. 2d 674, 106 S. Ct. 1431; *Schneble v. Florida* (1972), 405 U.S. 427, 31 L. Ed. 2d 340, 92 S. Ct. 1056), and the defendant's convictions may therefore be affirmed if we are able to conclude that the error was harmless beyond a reasonable doubt (see *Chapman v. California* (1967), 386 U.S. 18, 17 L. Ed. 2d 705, 87 S. Ct. 824."

*Johnson*'s holding that violations of a defendant's constitutional right to confrontation may be harmless error has been followed recently in *People v. Lofton*, 194 Ill. 2d 40, 61 (2000); *People v. McClanahan*, 191 Ill. 2d 127, 139 (2000); *People v. Davis*, 185 Ill. 2d 317, 338 (1998); and *People v. Dean*, 175 Ill. 2d 244, 258-59 (1997).

> " 'The correct inquiry is whether, assuming that the damaging potential of the cross-examination were fully realized, a reviewing court might nonetheless say that the error was harmless beyond a reasonable doubt. Whether such an error is harmless in a particular case depends upon a host of factors, all readily accessible to reviewing courts. These factors include the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the

extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case.' " *Davis*, 185 Ill. 2d at 338, quoting *Van Arsdall*, 475 U.S. at 684, 89 L. Ed. 2d at 686-87, 106 S. Ct. at 1438.

Illinois courts have applied a harmless error analysis to alleged violations of *Crawford* in *People v. Patterson*, 347 Ill. App. 3d 1044, 1051 (2004); *Thompson*, 349 Ill. App. 3d at 594-95; and *People v. Miles*, 351 Ill. App. 3d 857, 867 (2004).

Applying these principles to the instant case, I would find that we cannot say that the error in admitting B.R.'s outcry statements was harmless as to the aggravated criminal sexual assault counts in which B.R. is the victim. Consequently, I would vacate defendant's adjudication of wardship for those counts. I would also merge the lesser charge of aggravated criminal sexual abuse with K.R. as the victim into the aggravated criminal sexual assault with K.R. as the victim. I would also find that defendant's adjudication of wardship as to the one remaining count of aggravated criminal sexual assault in which K.R. is the victim is fully supported by the evidence. The trial court found the testimony of K.R., her mother, her grandmother, Chicago police investigator Terrazas, and Ms. Wilkins of the Department of Children and Family Services to be credible and sufficient to prove defendant delinquent beyond a reasonable doubt. Defendant fails to advance a persuasive argument as to why this evidence is insufficient to conclude that the error in admitting B.R.'s outcry statements was harmless beyond a reasonable doubt as to the count naming K.R. as the victim.